# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 96-10270

ERNEST GEORGE MCBRIDE,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

September 16, 1997

**ON REHEARING**

Before DUHÉ, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

We sua sponte withdraw our prior opinion at 118 F.3d 432, which held AEDPA to be applicable, and substitute the instant opinion.

This habeas corpus case presents the question of whether Ernest G. McBride's Sixth Amendment right to confront and cross-examine an adverse witness was violated when his parole was revoked on the basis of hearsay testimony. Despite being acquitted of sexual assault (the jury deliberated five minutes), the Texas Board of Corrections nevertheless revoked McBride's parole solely on the basis of a police officer's testimony as to what the alleged victim of the sexual assault told the officer. Although the alleged victim testified at trial, she never appeared before the parole board, and the State presented no evidence showing good cause excused the alleged victim's absence. After exhausting his state habeas remedies, McBride sought federal habeas relief. The magistrate

judge rejected McBride's contentions, and the district court adopted the magistrate's conclusions of fact and law. We granted a Certificate of Appealability on the sole question of whether the State deprived McBride of the right to cross-examine and confront an adverse witness during his parole revocation hearing. Finding a violation of McBride's Sixth Amendment rights, we REVERSE and REMAND this case to the district court with directions to send the case back to the parole board so that McBride may receive a new revocation hearing.

## BACKGROUND

Ernest G. McBride was sentenced to two life sentences in 1976 for aggravated robbery. He was paroled in 1988. Approximately four years after his release on parole, McBride was charged with sexually assaulting Tawanna Illescas. After McBride was initially arrested, he was released because Illescas declined to press charges. However, law enforcement officers thereafter ran McBride's name through an FBI computer and discovered that he had a criminal record. Law enforcement then contacted Illescas, and at that point she agreed to press charges. McBride was subsequently rearrested and a grand jury charged him with sexual assault.

In the meantime, a warrant ordering McBride's arrest on a parole-violation charge was issued.[1] In particular, the basis for arresting McBride was that he violated Rule 2 of his parole, which provided the following: "I recognize that my parole release is conditional and agree to abide by the following terms and conditions: . . . 2. Obey all municipal, county, state, and federal laws." On June 1, 1992, Parole Officer Thomas Blevins explained McBride's rights in the parole revocation process to him and informed McBride that he was charged with violating Rule 2 as a result of Illescas's accusations. McBride refused to sign the documents that showed that he was so informed. McBride did, however, request a preliminary revocation hearing, which was held on June 15, 1992.

---

[1]McBride's parole officer, Thomas Blevins, filled out an emergency warrant, and he described the "circumstances of the offense" as follows:

> Complainant stated she was walking on a sidewalk when releasee grabbed her and stated "You white bitch, if you call the police I will kill you". Releasee put one hand over complainant's mouth and then hit her several times. Releasee then dragged complainant into a parking lot[] pay attendant booth and forcibly had vaginal intercourse.

2

A.    The Preliminary Revocation Hearing[2]

At the preliminary hearing, McBride was informed that he had the right to call witnesses on his behalf. McBride immediately became concerned and responded as follows:

> What [am] I supposed to do? They, they can't even find her [i.e., Illescas] right now. What [am] I supposed to do, go look for her, tell her to come down here and straighten this out for me, sir?

The hearing officer responded: "No, we'll do that for you. We'll find the complainant." (Emphasis added.) McBride is then heard saying, "I sure hope so." Further along into the preliminary hearing, McBride once again asked the hearing officer whether "the complainant [was] supposed to be here," to which the hearing officer responded, "[n]ot at a preliminary hearing."

The hearing officer ultimately concluded that there was probable cause to believe that McBride sexually assaulted Illescas, so he recommended a hearing to determine whether McBride's parole should be revoked. The final revocation hearing was set for August 10, 1992.

B.    McBride's Subsequent Acquittal on the Sexual Assault Charge

In July 1992 (after the preliminary hearing, but before the final revocation hearing), the jury acquitted McBride of the sexual assault charge. McBride asserts, and the State does not indicate otherwise, that the jury deliberated for only five minutes before reaching a not guilty verdict. The record also shows that Illescas's credibility was a hotly contested issue.

C.    The Parole Revocation Hearing

---

[2]Both the preliminary revocation hearing as well as the final revocation hearing were tape recorded. The testimony, however, was never transcribed. In addition, we note that much of the tape is hard to hear because of background noise and because participants simply did not speak loud enough. For example, McBride's attorney cross-examined detective Stanley McNear (the State's only witness), yet on our copy of the tape, the attorney cannot be heard. Only McNear's answers are audible.

Moreover, side A of the tape cuts off as McBride's attorney is speaking and begins on side B with McBride in mid-sentence saying ". . . we don't get along." We have listened to the tape numerous times and we are unable to say with any degree of certainty that side B picks up where side A left off. We must therefore conclude that some statements made at the hearing were never picked up on the audio tape, thereby depriving us of a complete source of objective evidence of what occurred during the parole revocation hearings. This is troubling for obvious reasons: Because these hearings implicate constitutionally protected liberty interests (here, McBride faced a life sentence), it is paramount that meaningful appellate review be based on a complete and accurate record.

Despite McBride's acquittal, the revocation hearing was held as scheduled. Attorney Maribeth Murphy was appointed to represent McBride at the hearing. Although Illescas testified at trial, she was not called by the State to testify at the parole revocation hearing. Instead, only three witnesses appeared: Parole Officer Blevins, Dallas police detective Stanley McNear, and McBride.[3]

Before any of the witnesses testified, Blevins told the participants that detective McNear had not yet arrived. At that point, McBride interrupted the proceedings, stating, "How can they, uh, have a witness . . .," but then was immediately told to "talk to your attorney." McBride is then heard discussing the matter with his attorney, complaining that lies were told at the trial and that "how can they just come in here and, uh, say what they got to say. I don't understand that." McBride's attorney then responded that the revocation hearing is different from the trial, there is a different standard of evidence in parole revocation hearings as opposed to jury trials, and that the State is entitled to call witnesses. In response to McBride's question about witnesses called on his behalf, his attorney responded (rather curtly) that McBride had never given her a list of witnesses. Then McBride's attorney immediately said the following: "But you're certainly here to testify, are you not? To testify on your own behalf. To confront these witnesses at the hearing."

Blevins was the first to testify. He stated that McBride told him in July 1992 that he did not force Illescas to have sexual intercourse with him. Detective McNear then testified that Illescas told him that McBride "dragged her to a parking booth, struck her several times, threatened to kill her and forced her to have sexual intercourse." Illescas also told McNear that McBride took $117 from her. McNear testified that a hospital examination that same day showed that Illescas had been involved in sexual intercourse, although McBride had used a condom. McNear also testified that Illescas had bruises and scratches on her face. The medical report, however, was never offered into evidence, and McNear testified that Illescas was in Colorado at the time of the hearing.

McBride's counsel did not formally object to McNear's testimony, but at the close of the evidence, she argued that McBride's parole should not be revoked because the only evidence offered

[3]Another police officer was scheduled to testify, but he never showed up.

4

against McBride was hearsay. McBride thereafter testified that Illescas consented to have sex with him and that he did not threaten or strike her.

Solely on the basis of McNear's testimony, the hearing officer concluded that McBride engaged in unconsented sexual intercourse with Illescas and that he threatened to inflict bodily injury on Illescas. Both the hearing officer and the field officer recommended revocation of McBride's parole. On September 10, 1992, McBride's parole was revoked and he was to serve out the rest of his life sentence, excluding the time during which he was out on parole.

## PROCEDURAL HISTORY

In August 1994, McBride filed a habeas petition in state court. The trial court denied McBride's petition, concluding in three brief sentences that McBride's Sixth Amendment rights were not violated.[4] A judge of the Texas Criminal Court of Appeals denied habeas relief based on the trial court's findings.

McBride then filed a writ of habeas corpus in federal court on June 28, 1995, essentially rearguing the claims he made in state court. The magistrate judge denied McBride's petition, concluding, among other things, that the parole revocation hearing did not violate McBride's rights under the Due Process Clause of the Fourteenth Amendment. McBride filed objections to the magistrate's report on February 26, 1996, however, the district court adopted the magistrate's conclusions of fact and law and denied habeas relief on February 27, 1996. McBride then filed a

---

[4]The trial court stated the following:

> 3. The Court finds that the procedural due process exhibited by the documents provided shows that Applicant was provided a proper hearing and due process.

> 4. The Court finds that Applicant's complaints about his parole being revoked are without merit and recommends that they be denied.

> 5. The Court finds that Applicant has not been denied any rights guaranteed by him by the Constitution of the United States . . . .

notice of appeal on March 14, 1996.  On March 18, 1996, the district court denied a Certificate of Probable Cause (CPC).  On July 1, 1996, this court treated McBride's application for CPC as an application for a Certificate of Appealability (COA) pursuant to 28 U.S.C. § 2253(c)(1) and granted a COA on the issue of "whether McBride is entitled to relief on grounds that the state's evidence at his parole revocation hearing consisted of hearsay. . . .  Farrish v. Mississippi State Parole Bd., 836 F.2d 969 ([5th Cir.] 1988)."

## DISCUSSION

### I.    STANDARD OF REVIEW

We granted a COA on the sole question of whether McBride's Sixth Amendment right to confront and cross-examine adverse witnesses was violated.  As such, our review would ordinarily be limited to that issue alone.  See Lackey v. Johnson, 116 F.3d 149, 151-52 (5th Cir. 1997).  However, the Supreme Court's decision in Lindh v. Murphy, 117 S. Ct. 2059 (1997) changes our previous conclusion that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996) applies to this case.  In Lindh, the Supreme Court held that in noncapital cases, chapter 153 of the AEDPA does not apply retroactively.  117 S. Ct. at 2068.  Because § 2254 is implicated in this case and because § 2254 is part of chapter 153 of the AEDPA, the Court's holding in Lindh applies to this appeal.

Prior to Lindh, our cases held that the AEDPA applied to all habeas petitions pending on the effective date of the statute.  Our polestar of guidance was Drinkard v. Johnson, 97 F.3d 751 (5th Cir. 1996), cert. denied, 117 S. Ct. 1114 (1997), in which we concluded that the AEDPA did not raise the retroactivity concerns highlighted in Landgraf v. USI Film Products, 511 U.S. 244, 114 S. Ct. 1483, 128 L.Ed. 2d. 229 (1994).  However, Lindh's holding now guides our analysis of this issue.  See Blankenship v. Johnson, 118 F.3d 312, 315 (5th Cir. 1997); Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997).

Accordingly, because McBride's federal habeas petition was filed before the effective date of the AEDPA, Lindh compels the conclusion that the AEDPA does not apply to McBride's habeas

petition, and we construe our previous grant of a COA as a grant of a CPC.[5] Unlike the more narrow standard of review applicable to habeas petitions that come within the AEDPA, Lackey v. Johnson, 116 F.3d at 151-52, a grant of a CPC on a particular issue nonetheless brings up all issues raised in a petitioner's federal habeas petition, id. at 152 (authority cited therein).

This different, broader scope of review, however, does not change the result in this case, for we have reviewed all of McBride's claims and conclude that only his Sixth Amendment claim has merit. This case therefore presents a pure question of law, such that we must determine whether McBride has made a "substantial showing of a denial of [a] federal right." Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983).

## II.   THE CONFRONTATION CLAUSE AND PAROLE REVOCATION HEARINGS

McBride claims that his right to procedural due process was violated because the State revoked his parole in violation of his Sixth Amendment right to confront and cross-examine adverse witnesses. Specifically, McBride asserts (and the State does not disagree) that the sole evidentiary basis for revoking his parole consisted of hearsay evidence introduced by officer McNear, evidence that consisted of Illescas's statements to McNear about what happened on the night Illescas was allegedly assaulted. Accordingly, argues McBride, he was denied the opportunity to cross-examine and confront Illescas in violation of the Sixth Amendment. We agree.

In the seminal decision of Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court held that the constitutional right to procedural due process attaches to parole revocation hearings. In reaching this conclusion, the Court recognized that "the concept of due process is flexible," but that its flexibility "is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." Id. at 481. As such, although a formal trial-like procedure is not required,[6] the

---

[5]Because of the holding in Lindh, we sua sponte withdraw our prior opi nion at 118 F.3d 432, which held AEDPA to be applicable, and substitute the instant opinion.

[6]Carchman v. Nash, 473 U.S. 716, 725-26 (1985); Hamilton v. Lyons, 74 F.3d 99, 105 (5th Cir. 1996); United States v. Grandlund, 71 F.3d 507, 509 (5th Cir. 1995), cert. denied, 116 S.Ct. 1031 (1996), and opinion clarified, 77 F.3d 811 (5th Cir. 1996).

Court, after concluding that the Due Process Clause of the Fourteenth Amendment provided at least informal procedural protections to parolees, outlined the minimum constitutional requirements for the two critical stages in the parole revocation process.

First, states conduct a preliminary hearing, in which the State determines "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." 408 U.S. at 485. Because there may be a substantial lag time between the parolee's arrest and subsequent determination of whether parole should be revoked, the Court recognized the need for "some minimal inquiry" which would take place "as promptly as convenient" to determine whether the parolee should be incarcerated pending a final determination by the parole board. Accordingly, at the preliminary hearing stage, the Court suggested at least three procedural protections:

> [1] the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. [2] At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. [3] <u>On request of the parolee</u>, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning in his presence. However, if the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

Id. at 486-87 (emphasis added). We have emphasized the Supreme Court's words because they indicate that the Court surely was not suggesting that a parolee has the right, in every preliminary hearing, to confront and cross-examine adverse witnesses. The right, as the Court subsequently explained, is a "conditional one"—the condition being the parolee's affirmative request to confront an adverse witness. See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973).

Second, if the State determines that there is probable cause for believing the parolee violated the terms of his parole, the State must afford the parolee (if he or she so chooses) a final revocation hearing whose purpose goes beyond a determination of probable cause "to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." 408 U.S. at 438. The Court provided six, essential protections required by the Due Process Clause:

8

[1] written notice of the claimed violations of parole; [2] disclosure to the parolee of evidence against him; [3] opportunity to be heard in person and to present witnesses and documentary evidence; [4] the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); [5] a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and [6] a written statement by the factfinders as to the evidence relied on and reasons for revoking parole

.

Id. at 489 (emphasis added). The Court stressed that the final revocation hearing should be a "narrow inquiry," yet sufficiently flexible so that the parole board may "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Id. (emphasis added). The goal always is to ensure that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Id. at 484 (emphasis added).

We have since added some flesh to the basic Morrissey framework. In Farrish v. Mississippi State Parole Bd., 836 F.2d 969 (5th Cir. 1988), we declined to afford a commissioner of corrections qualified immunity for permitting hearsay testimony in a parolee's preliminary hearing. We began by noting the inherent problems with hearsay testimony, which we said "presents a two-fold problem: it prevents the parolee from confronting and cross-examining the declarant, and unreliable hearsay undermines the accuracy of the fact-finding process." Id. at 978. We then proceeded to apply these principles to a "classic example of when the use of hearsay impermissibly violates the right [guaranteed in Morrissey] to confront and cross-examine the declarant." Id. In an analysis of facts virtually identical to those presented in this case, we concluded as follows:

The only evidence that Farrish committed the alleged parole violation—the sale of marijuana—was Mohon's [i.e., the hearsay declarant] testimony. Mohon's self-serving statements contradicted Farrish's version of the same events, and the statements were inherently unreliable because if believed, they shifted a potential conviction for drug dealing from Mohon to Farrish. In short, the question of whether Farrish sold marijuana required a credibility choice between the two witnesses. However, rather than appearing as Farrish requested, Mohon testified in a most damaging way—through the police officers. The admission of Mohon's hearsay statements effectively deprived Farrish of his right to confront the adverse witness whose information provided the basis for parole revocation in a situation where his interest in exercising that right was paramount.

Id.; accord United States v. McCormick, 54 F.3d at 226 n.49 (dictum).

9

This case involves a denial of McBride's right to confront and cross-examine an adverse witness during the final revocation hearing. Although Farrish involved a preliminary revocation hearing, we think the principles laid down in that case apply with equal force here. The charge of sexual assault turned on a credibility choice between McBride and Illescas, yet McBride was not provided an opportunity to confront Illescas and perhaps cast a shadow on her credibility. In addition, McBride was acquitted of the sexual assault charge and the only evidence presented in the parole hearing (and the evidence the parole board relied on in its decision to revoke parole) consisted of the hearsay testimony presented by detective McNear about what Illescas told him happened on the night in question. McBride faced a life sentence if his parole was revoked, and we conclude that the evidence admitted at the revocation hearing violated McBride's constitutional right to procedural due process.

The State concedes that the only evidence offered against McBride at the revocation hearing consisted of hearsay. The State's only argument in this appeal is that because McBride failed to object to the hearsay testimony as it was being presented, he cannot now complain that his Sixth Amendment rights were violated. We reject this contention for a number of reasons.

First, we do not believe, as the State asserts, that McBride failed to "adequately invoke his right to confront and cross-examine the victim." Our review of the record reveals that on at least three occasions, McBride clearly expressed an intent to have Illescas present during the revocation proceedings: (1) at the preliminary hearing, McBride stated that he was concerned about being able to locate Illescas, to which the hearing officer replied, 'we'll do that for you. We'll find the complainant"; McBride then responded, "I sure hope so"; (2) at another point in the preliminary hearing, McBride asked the hearing officer whether Illescas was "supposed to be here," and the hearing officer said, "[n]ot at a preliminary hearing";[7] and (3) at the beginning of the parole hearing, McBride complained about the proposed testimony of detective McNear because, in McBride's eyes,

---

[7]Of course, this statement is not entirely accurate. In Morrissey, the Supreme Court unambiguously stated that if the parolee requests the presence of an adverse witness, that adverse witness must be produced unless good cause excuses the witness's absence. 408 U.S. at 487.

that testimony would reflect the lies told at trial. In addition, at the close of the "evidence," McBride's attorney argued that McBride's parole should not be revoked because the only evidence against McBride consisted of hearsay. And, as we have pointed out in footnote 2, the tape recording of the final revocation hearing does not present us with a full accounting of what happened at that hearing, so we cannot accept the State's suggestion that neither McBride nor his attorney objected to the introduction of hearsay testimony.[8]

In light of all of these facts, we simply cannot conclude that McBride failed to invoke his right to confront and cross-examine Illescas at the revocation hearing—especially because her testimony (offered, as it was, through detective McNear) was the only evidence introduced against McBride. McBride was told in no uncertain terms by the hearing officer that they would find Illescas for him, and because that statement was made on the heels of McBride's concern over Illescas's appearance at the revocation proceedings, it was reasonable for McBride to rely on the State's assurances that Illescas would appear before the parole board. We recognize that McBride's invocation of his Sixth Amendment rights was not as clear as it could have been. However, we do not believe that preserving the Sixth Amendment right to confront and cross-examine adverse witnesses requires parolees to invoke their right in only one way. We have listened (several times) to the tape of the revocation hearings, and we are convinced that McBride invoked his right (to no avail) to confront and cross-examine Illescas.

Second, we reject the State's contention that we should deny McBride habeas relief because he could have done more (short of cross-examining Illescas) to cast doubt on Illescas's version of the events. The State cites to our decision in McCormick, 54 F.3d 214, for the proposition that "if cross-examination of [Illescas] was so critical to his defense he or counsel could have simply produced a statement of facts of her testimony at the criminal trial where he had been found not guilty. Thus, an

_____

[8]Indeed, McBride asserts in his pro se brief on appeal that objections were made by counsel regarding the hearsay evidence; however, he was never provided a copy of the hearing tapes to prepare his appeal. Accordingly, McBride's refutation of the State's claim of waiver is of limited persuasive value.

11

alternative was clearly available to McBride which he did not pursue." The State is correct in its position that McBride could have done all of these things, and in fact, McBride did introduce some evidence from the criminal trial during the revocation hearing.

However, the State's reading of McCormick goes too far because the same argument could have been made in Farrish and every other case in which the State relies on the hearsay testimony of a single witness to revoke an individual's parole. Such a result, we think, cuts the heart out of Morrissey's guarantee of the right to confront and cross-examine adverse witnesses at final revocation hearings. Moreover, dictum in McCormick supports our conclusion. Citing Farrish, here's what we said in McCormick: "[w]e are troubled by the district court's apparent admission of Officer Velasquez' testimony regarding the CI. Had that been the only evidence of McCormick's drug possession, we are confident that the district court would have erred in relying on it as competent evidence, . . . unless, of course, the court made a specific finding that good cause excused the CI from testifying." 54 F.3d at 226 n.49 (emphasis added). McCormick's reaffirmance of the principles underlying Farrish compels our conclusion today.

Finally, in its letter brief to this court, the State suggests that Illescas could not attend the hearing because she was in Denver, Colorado. To the extent the State suggests that good cause excused Illescas's absence from the hearings, we reject the argument because there was no finding of good cause or evidence of why Illescas should not appear sufficient to overcome or outweigh McBride's right to confrontation or cross-examination.

## CONCLUSION

Finding that the State violated McBride's Sixth Amendment right to confront and cross-examine Illescas during his parole revocation hearing, we REVERSE the district court's denial of habeas relief, and REMAND this case to the district court with directions to send the case back to the parole board so that McBride may receive a parole revocation hearing consistent with the Due Process Clause of the Fourteenth Amendment.

REVERSED and REMANDED.

12