# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

m 98-20248
Summary Calendar
_____

JAMES EDWARD HAGGERTY,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-3939)

_____

December 6, 1999

Before SMITH, BARKSDALE, and
    STEWART, Circuit Judges.

PER CURIAM:[*]

James Haggerty appeals the denial of his petition for writ of habeas corpus. We reverse and remand.

## I.

Haggerty is serving a sentence on his 1990 conviction of burglary of a building and was released on parole in November 1993. State officials alleged that in July 1995, he violated rules 2 and 5 of the conditions of his parole by committing a burglary, unlawfully possessing a firearm as a convicted felon, and possessing a firearm.

A preliminary revocation hearing was held in August 1995. The main evidence was affidavits of two officers of the San Augustine Police Department, establishing that a .22 caliber pistol, among other items, was stolen during a burglary at the Whitton Building in San Augustine, Texas.

Chief Deputy Larry Saurage swore that he had been informed by a confidential informant that Haggerty was the burglar; that the stolen pistol was in Laura Coleman's possession; that Coleman was questioned and stated that Haggerty and Ricky Borders came to her house and wanted to sell a pistol, which she purchased after she was told the gun belonged to Borders; that Coleman turned the pistol over to Saurage; and that the pistol was identified later as the one taken during the burglary. Officer Lynn Lyons, meanwhile, swore that she had been contacted by a confidential informant who was in possession

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of a .22 caliber pistol that the informant thought to have been stolen and that she had obtained from Haggerty, Borders, and an unidentified white male who waited in a vehicle, and that the pistol was identified as the one stolen during the burglary.

At the revocation hearing, Coleman and Lyons were called as witnesses; Borders had been subpoenaed but failed to appear. Because Saurage was out of town, the state submitted his affidavit in lieu of live testimony, and the hearing officer found good cause to disallow cross-examination and confrontation of Saurage. Admitted into evidence were the preliminary hearing report; an indictment charging Haggerty with burglary of a building; Saurage's affidavit; and the subpoena served on Saurage.

In his affidavit, Saurage averred that Coleman stated that she had purchased the pistol from Haggerty and Borders and that Borders told him that on the night of the burglary he met Haggerty, who had the gun in his possession. Borders said that they sold the gun to Coleman for crack cocaine and told Coleman that the pistol belonged to Borders.

Lyons testified that he had been contacted by Saurage to meet a man regarding a stolen firearm, that Saurage had retrieved a stolen weapon from a confidential informant, and that it was identified by the victim as the pistol stolen during the burglary. Coleman testified that Haggerty and Borders had come to her apartment to sell a gun and that she bought the gun from Borders for $20, that when she learned the gun was stolen, she turned it over to police, and that she told Saurage that Borders had sold her the gun and that, although Haggerty had accompanied Borders during the sale, Haggerty was not involved in the sale of the gun.

Haggerty testified that a third man, "Gary," tried to sell the pistol to him and that Borders told Gary that he knew a place to get rid of the pistol. Haggerty accompanied Borders to Coleman's apartment and witnessed Borders selling the gun to Coleman. He testified that he never possessed the gun and denied any involvement in its sale.

The hearing officer found the evidence insufficient to support the burglary allegation but found that Haggerty had possessed a pistol in violation of rules 2 and 5. The Board of Pardons and Paroles revoked Haggerty's parole.

Haggerty moved to reopen the revocation proceedings, pointing to the lack of evidence that the pistol was found in his possession. He noted that Coleman testified that she bought the pistol from Borders and that Haggerty had nothing to do with the sale; that Borders's testimony was important and that no explanation was given for Borders's failure to appear; and that Saurage's affidavit contradicted Coleman's testimony about what Borders said and about what Coleman told Saurage. Haggerty argued that the state had failed to prove that he knew the pistol was stolen, and his parole could not be revoked based merely on his presence during the sale. In November 1995, the Board of Pardons and Paroles granted Haggerty's motion to reopen to take Saurage's live testimony, noting that the findings were not supported by a preponderance of the evidence or were contrary to law, that the police officer was not present at the hearing, and that there were no indicia of reliability to support his affidavit.

At the re-opened revocation hearing, Saurage testified, live, to the following: A confidential informant told him that a stolen gun had been sold to Coleman; Coleman told him that she purchased the gun from Haggerty and Borders; Borders told him that Haggerty was in possession of the gun, that Borders and Haggerty went together to Coleman's apartment, told Coleman the gun was Borders's, and sold the gun to Coleman for crack cocaine; and that Coleman runs a crack house and is a known crack dealer. Haggerty testified that Coleman had no reason to lie at the prior revocation hearing, that he was not involved in the possession of the firearm, and that he did not believe that Borders told Saurage that Haggerty was involved in the sale of the gun, because Haggerty had spoken with Borders approximately one month after the first revocation hearing, and Borders had denied giving Saurage such a statement.

2

The hearing officer again concluded that Haggerty had violated rules 2 and 5 by unlawfully possessing the pistol. In May 1996, the Board of Pardons and Paroles revoked Haggerty's parole. In June 1996, Haggerty filed a second motion to reopen, asserting that there was no evidence or affidavit to support Saurage's testimony about what Borders had said, that Borders was subpoenaed to testify but failed to appear without explanation, that Saurage's hearsay testimony was contradicted by Coleman's testimony under oath, and that the hearing officer improperly credited Saurage's testimony over Coleman's.

## II.

In November 1996, after properly exhausting state habeas opportunities, Haggerty, proceeding *pro se* and *in forma pauperis*, filed a 28 U.S.C. § 2254 petition in federal court, attaching a copy of his state habeas application as his allegations and moving to strike Saurage's affidavit, essentially challenging its substance.

The court granted the state's motion for summary judgment, determining in pertinent part that the hearing officer had good cause to allow Borders's hearsay statements to be introduced through the testimony of Saurage and Coleman, despite the hearing officer's failure to make an explicit good-cause finding, and concluded that Haggerty's due process rights had not been violated by the use of Saurage's and Coleman's's hearsay statements or "by the use of Borders' hearsay statements because Haggerty, represented by counsel, did not object or otherwise assert his right to confront and cross-examine Borders," and because the record showed that statements by Borders would have been "cumulative and repetitive of other evidence, primarily Coleman's live testimony."

The court therefore dismissed Haggerty's § 2254 petition with prejudice and denied him a certificate of appealability ("COA"). This court granted a COA on the questions of whether Haggerty adequately asserted his right to confront and cross-examine Borders, whether good cause existed to disallow such confrontation and cross-examination of Borders, whether Borders's hearsay statements bore sufficient indicia of reliability, and whether the error in denying confrontation, if any, was harmless.

**3**

### III.

Because Haggerty filed his § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA applies to his appeal.[1] Although AEDPA created a standard of review for state court decisions rendered on the merits, *see* 28 U.S.C. § 2254(d), the § 2254(d) standard is not applicable to federal constitutional claims that were not adjudicated on the merits in state court, and we review such claims *de novo*.[2]

Although Haggerty raised the issue, the state habeas court did not address whether he was denied the right to confront and cross-examine Borders. Because the state habeas court made no findings or conclusions on this issue, our review is *de novo*. *See Nobles*, 127 F.3d at 416. We also review a summary judgment *de novo*, using the same standard applicable in the district court. *See Matagorda County v. Law*, 19 F.3d 215, 217 (5th Cir. 1994).

### IV.

Haggerty argues that he adequately asserted his right to confront and cross-examine Borders, that good cause did not exist to disallow his confrontation and cross-examination of Borders, that Borders's hearsay statements lacked a sufficient indicia of reliability, and that Saurage's account of what Borders told him contradicted Coleman's live testimony that Haggerty had nothing to do with the sale or possession of the gun. Haggerty asserts that it was the state's obligation to produce all witnesses it had on whose testimony it was going to rely to obtain a revocation, and that the error in denying confrontation was not harmless error.

The state argues that Haggerty did not object to the hearsay testimony (obviating the need for the hearing officer to determine

whether good cause existed), that Borders's statements implicating Haggerty in possessing the gun had a high degree of trustworthiness, because, through his statements, Borders implicated himself in the crime of selling the pistol to obtain drugs, and that there was no error, because the statements were properly admitted.

### V.

The Due Process Clause requires that, before parole is revoked, a preliminary hearing be held "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *See Morrissey v. Brewer,* 408 U.S. 471, 485 (1972). The parolee then is entitled to a final revocation hearing, at which he has "an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."[3]

The minimum procedural due process requirements for the final revocation hearing include (1) written notice of the alleged violations of parole; (2) the disclosure to the parolee of evidence against him; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the qualified right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation; (5) a neutral and detached hearing body; and (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. *See Morrissey*, 408 U.S. at 489; *McBride*, 118 F.3d at 437. The finding of a parole violation should be based on verified facts and be "informed by an accurate knowledge of the parolee's behavior." *Morrissey*, 408 U.S. at 484. A revocation hearing, however, is not a criminal prosecution; "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary

---

[1] *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Green v. Johnson*, 116 F.3d 1115, 1120 (5th Cir. 1997).

[2] *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1845 (1998).

[3] *Morrissey*, 408 U.S. at 487-88; *see McBride v. Johnson*, 118 F.3d 432, 437 (5th Cir. 1997).

criminal trial." *Id.* at 489.

Despite this lowered standard, hearsay testimony remains problematic, because it "prevents the parolee from confronting and cross-examining the declarant," and "unreliable hearsay undermines the accuracy of the fact-finding process." *Farrish v. Mississippi State Parole Bd.*, 836 F.2d 969, 978 (5th Cir. 1988). "[C]ourts considering the admissibility of hearsay in revocation proceedings have adopted an approach which balances the parolee's interest in confronting a particular witness against the government's good cause for denying it, particularly focusing on the 'indicia of reliability' of a given hearsay statement." *Id.* Hence, in carving out a good-cause exception to the general rule that hearsay cannot be employed even in a parole hearing, the courts have hewn narrowly, finding good cause only when strong "indicia of reliability" of the hearsay existSSwhich indicia they have found primarily in cases in which field tests or other objective measures are being reported by hearsay.[4]

---

[4] *See United States v. Grandlund*, 77 F.3d 811, 811 (5th Cir. 1996), *clarifying United States v. Grandlund ("Grandlund I")*, 71 F.3d 507, 510 (5th Cir. 1995); *see also United States v. Kindred*, 918 F.2d 485, 486 (5th Cir. 1990) (urinalysis); *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986) (same); *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983) (same). In *Penn*, the court noted that

[t]he difficulty and expense of procuring live witnesses would not suffice as an excuse for admitting hearsay testimony in a criminal trial, but the Court tenders this as an example of a situation in which hearsay could be admissible in a probation revocation proceeding. Likewise, the Court recommends the conventional substitutes for hearsay: affidavits, depositions and documentary evidence. These conventional substitutes tend to bear the "indicia of reliability" upon which the Court has focused in the related context of determining whether a given hearsay statement should be admissible in a criminal trial.

*Id.* at 765. Of course, this does not assist the state here, because the hearsay on which it depends
(continued...)

In *Farrish*, 836 F.2d at 979, this court upheld a monetary judgment in favor of a parolee against the Mississippi Commissioner of Corrections for the denial of due process at a revocation hearing. The only evidence that he had committed the alleged parole violation was an informant's statement introduced through a police officer's testimony. *Id.* at 978. Farrish had requested the informant's presence at the hearing. *Id.* at 970. We determined that the statements were inherently unreliable because, if believed, they "shifted a potential conviction for drug dealing from [the informant] to Farrish." *Id.* at 978. We held that this was "a classic example of when the use of hearsay impermissibly violates a right to confront and cross-examine the declarant." *Id.*

In *McBride*, 118 F.3d at 439-40, we held that the petitioner's right to confront and cross-examine an adverse witness was violated when his parole was revoked on the sole basis of hearsay testimony. McBride was charged with committing an aggravated assault while on parole, but ultimately a jury acquitted him. *Id.* at 433-34. Based on the purported aggravated assault, the parole board charged that McBride had violated his parole by failing to obey state law. *Id.* at 434. The alleged victim did not testify at the revocation hearing. *Id.* A police officer testified concerning what the victim had told him about the assault, and parole was revoked based on the officer's hearsay testimony and over objection. *Id.*

The facts of these cases virtually mirror those here. The district court did not apply the precedent to this case, however, because it concluded that Haggerty had waived his due process rights by failing to object to Saurage's hearsay statements or to assert his right to confront and cross-examine Borders.

## VI.
### A.

The state argues that the right of

---

(...continued)
appears not in the affidavit or other testimony of the witness, but only in the unsubstantiated second-hand report of an involved law officer.

confrontation and cross-examination is an affirmative right that must be invoked by the parolee, and asserts that there is no "indication" that Haggerty objected to Saurage's hearsay testimony about what Borders said or to the violation of his right to confront and cross-examine Borders. The state concedes that Haggerty's lack of objection regarding Borders's statements could be explained by Borders's failure to appear at the hearing, despite a subpoena. The state notes, however, that Haggerty did not request, in his motion to reopen, that Borders be subpoenaed to attend the new hearing, and asserts that Haggerty waived any objection by failing to object to the hearsay nature of Borders's information that came in through Saurage's testimony at the reopened hearing.

This argument is unavailing. In *McBride*, 118 F.3d at 438-39, we explained that while that defendant's "invocation of his Sixth Amendment rights was not as clear as it could have been[,] we do not believe that preserving the Sixth Amendment right to confront and cross-examine adverse witnesses requires parolees to invoke their right in only one way."

Haggerty made robust, if somewhat indirect, objections to the use of Saurage's hearsay testimony. In his motion to reopen filed after the original revocation hearing, Haggerty argued that Borders's testimony was "very important" to the question of whether he and Borders or just Borders sold the pistol to Coleman. He noted that Borders had been subpoenaed but did not appear and that no explanation for his absence was offered. He argued that Borders's statement that he and Borders met on the night of the burglary; that he had the gun with him; and that they then sold it to Coleman could not be true, because the record showed that the sale of the pistol did not occur until after the burglary.

In his motion to reopen the reopened hearing, Haggerty asserted that Saurage's testimony about Borders's statement was false and unsupported by any written statement or affidavit. He noted again that Borders had been subpoenaed but failed to appear, and he asserted that Borders told him that he did not make a statement to Saurage. These, collectively, must be understood appropriately to have raised Haggerty's objection to the testimony.

**6**

### B.

Even assuming, *arguendo*, that Haggerty failed to assert his confrontation right or to object to the admission of Borders's hearsay, the district court's failure explicitly to find good cause for not allowing confrontation is reviewable for plain error.[5] Under FED. R. CRIM. P. 52(b), we can correct forfeited errors when the appellant shows the existence of an error, that it was clear or obvious, and that it affected his substantial rights, *see United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), and when the error seriously affects the fairness, integrity, or public reputation of judicial proceedings, *see United States v. Olano*, 507 U.S. 725, 735-36 (1993).

A parolee's right to confront an adverse witness may be disallowed on a finding of good cause. *Grandlund I*, 71 F.3d at 510. In determining whether good cause exists, the parole board must weigh the defendant's interest in confronting the witness against the state's interest in denying confrontation. *See id.* "A critical consideration is the indicia of reliability of the challenged evidence." *Id.* The failure to make a specific finding of good cause "may require reversal in most instances, but may be found to be harmless error where good cause exists, its basis is found in the record, and its finding is implicit in the [hearing officer's] rulings." *Id.* (internal footnotes and citations omitted).

The revocation of Haggerty's parole was based, in pertinent part, on Saurage's testimony that Borders told him that Haggerty possessed the gun, that they had decided to sell the gun to Coleman in exchange for crack cocaine, and that Borders had told Coleman that the gun belonged to him. Based on Saurage's testimony, the hearing officer questioned the credibility of Coleman's testimony that she had purchased the gun for $20.

Coleman testified that Haggerty and Borders came to her apartment and wanted to sell a pistolSSbut also that Borders said the gun was his. She testified that she purchased the gun from Borders for $20 and that Haggerty had nothing to do with the sale.

Haggerty testified that a third man possessed the gun and that he merely accompanied Borders to Coleman's apartment during the sale, but had nothing to do with the possession or sale of the pistol. Haggerty's testimony is consistent with the police report, which indicated that a confidential informant told Lyons that she had possession of a pistol she had obtained from Haggerty, Borders, and an unidentified white male who waited in a vehicle.

The court concluded that there was good cause to allow the hearsay statements of Borders through Saurage's and Coleman's testimony, that the hearing officer determined that the statements were reliable, and that Haggerty was allowed to testify about what Borders told him. The court also noted that Borders's statements were "cumulative and repetitive of other evidence, primarily Coleman's live testimony." Saurage's testimony about what Borders said was not cumulative or repetitive of Coleman's testimony, except to the extent that each testified that Borders and Haggerty went to Coleman's apartment and that Borders said the gun was his.

The hearing officer found that there were sufficient indicia of reliability to support the alleged parole violations based on Saurage's testimony that Borders said that Haggerty was in possession of the gun, that they went together to Coleman's apartment, and that they sold the gun to Coleman for crack cocaine; Coleman's statement to police that she purchased the gun from Borders and Haggerty; and her testimony that Haggerty

---

[5] *See Crawford v. Falcon Drilling Co., Inc.*, 131 F.3d 1120, 1123 (5th Cir. 1997); *Cf. United States v. Alaniz-Alaniz*, 38 F.3d 788, 791-92 (5th Cir. 1994) (assuming that the district court's failure to conduct the good-cause balancing test and use of hearsay testimony, admitted without objection at a federal prisoner's revocation hearing, was plain error, but concluding that Alaniz had failed to demonstrate that the district court violated his substantial rights by relying on the testimony).

was present during the sale of the gun. There is, however, no indication that Borders's statement that Haggerty was in possession of the gun was reliable.

Although Haggerty was allowed to testify as to his version of events and to cross-examine Saurage, he was not allowed to confront Borders—the only source of the evidence that Haggerty possessed the gun. Even the hearing officer's finding that Saurage was more credible than Haggerty or Coleman does not satisfy the good-cause balancing test.

Saurage's credibility was not the issue. It may be that Borders told Saurage that Haggerty had possession of the gun, but Haggerty did not have the opportunity to confront Borders about that statement, which was the only evidence that Haggerty possessed the pistol and was admitted for the truth of the matter asserted.

Haggerty specifically denied possessing the pistol. There was no live testimony or admissions that corroborated Borders's statement that Haggerty did so. The only element of Borders's statement that was corroborated was that he and Haggerty went to Coleman's apartment, Borders told her the gun was his, and Borders sold the gun to her. Borders's statement that he and Haggerty were going to sell the pistol directly contradicts Coleman's and Haggerty's live testimony.

This uncorroborated hearsay—which, even if spoken by Borders, would have been said in suspect circumstances, in which it cannot be reliably asserted that Borders would have been speaking truthfully—strays rather far from the core situation in which the good-cause exception is appropriate—testimony about verifiable, objective drug testing, and far too from any suggested usage of affidavit or other testimony given under oath by the witness directly to the court. In essence, the hearsay testimony—Borders's statement that Haggerty possessed the pistol—bears little or no indicia of reliability.

Moreover, the state advances no reason why its interest in denying confrontation of Borders outweighed Haggerty's right of confrontation. Borders had been subpoenaed to appear at the first revocation hearing but failed to do so, and there was no explanation for that failure. There is no indication that Borders was subpoenaed to appear at the reopened hearing, nor allegation that Haggerty procured Borders's absence.

In *Belk v. Purkett*, 15 F.3d 803, 813 (8th Cir. 1994), the court rejected as irrelevant the state's argument that the parolee had failed to request the presence of adverse witnesses at the revocation hearing. "For the final revocation hearing . . ., it is incumbent upon the state authorities to produce the witnesses upon whose testimony said authorities rely to strip a parolee of his liberty. Only when the hearing officer specifically finds good cause for disallowing confrontation is the state relieved of its burden." *Id.* We agree.

The record does not support a finding of good cause, nor is such a finding implicit in the hearing officer's rulings. Accordingly, even assuming that Haggerty did not properly object, the hearing officer's failure to make a specific finding of good cause to disallow confrontation of Borders and to weigh Haggerty's interests against the state's interest is reversible error.

Concluding that the state violated Haggerty's Sixth Amendment right to confront and cross-examine Borders during his parole revocation hearing, we REVERSE the denial of habeas relief and REMAND so the district court can return this matter to the parole board for a sufficient parole revocation hearing.