FILED
United States Court of Appeals
Tenth Circuit

November 24, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRUCE A. CURTIS,

Petitioner-Appellant,

v.

CLAUDE CHESTER, Warden, USP-Leavenworth; UNITED STATES PAROLE COMMISSION,

Respondents-Appellees.

No. 09-3338

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 5:07-CV-03266-RDR)

---

*Submitted on the Briefs*

Bruce A. Curtis, Pro Se, Federal Correctional Institution, Butner, North Carolina.

Lanny D. Welch, United States Attorney, and Jackie A. Rapstine, Assistant United States Attorney, District of Kansas, Topeka, Kansas, for Respondents.

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Bruce Alan Curtis, a federal prisoner proceeding pro se, filed a habeas corpus petition under 28 U.S.C. § 2241 to challenge the United States Parole

Commission's decision to revoke his parole and set an above-guidelines reconsideration date of 15 years.[1] He argues the parole board violated his Sixth Amendment right to confront adverse witnesses and also engaged in impermissible "double counting" to arrive at the reconsideration date. The district court found these claims to be groundless and denied his petition.

We have jurisdiction under 28 U.S.C. § 1291. After a careful review of the record, we agree Curtis's rights were not violated and therefore AFFIRM.

## I. Background

Curtis was convicted in federal court of first degree felony murder in 1976 resulting from an attempted rape. He was given a life sentence but was eligible for parole. He was initially paroled in 1998 but was reincarcerated on at least two occasions after committing minor offenses. In 2002, Curtis was once again released on parole.

Weeks after his 2002 release, Curtis assaulted a female victim. The victim told police Curtis punched her in the face, attempted to rape her, and threatened to kill her. Curtis was charged with attempted forcible rape, attempted forcible

---

[1] Because Curtis is proceeding pro se, we construe his filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991). As a federal prisoner seeking habeas under 28 U.S.C. § 2241, Curtis is not required to obtain a certificate of appealability before appealing the denial of his petition by the district court. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 810 n.1 (10th Cir. 2007).

sodomy, felony assaults, and threats. As part of a plea agreement, Curtis pleaded guilty to assault and the state dismissed the remaining charges with prejudice.

The United States Parole Commission found probable cause for revoking Curtis's parole. *See* 28 C.F.R. § 2.48. In making this determination, the parole board relied on the dismissed charges relating to attempted rape as well as the new assault conviction. During the revocation hearing, Curtis objected to both the presence of one adverse witness (the police officer who investigated the incident) and the absence of another adverse witness (the victim). The victim was not present, even though a subpoena had been issued, because she had moved without a forwarding address and none of the parties could locate her.

The board revoked Curtis's parole based on his assault conviction and its finding that Curtis had attempted to rape the victim. Furthermore, it found a pattern of dangerous and violent behavior that was not sufficiently reflected in Curtis's guidelines parole reconsideration date. The board therefore gave him an above-guidelines reconsideration date of 15 years.

## II. Analysis

Curtis raises the following issues on appeal: (1) whether it was error for the parole board to rely on the dismissed attempted rape charge without allowing him to confront the victim; (2) whether the board engaged in impermissible "double counting" to arrive at its above-guidelines sentence; and (3) whether the district

-3-

court erred in denying an evidentiary hearing and denying production of the revocation hearing audio tape.

## A. Standard of Review

Our review of parole board decisions is quite limited.

> The Commission's decision will stand unless it is arbitrary and capricious. It is not the function of courts to review the Board's discretion in denying parole or to repass on the credibility of reports received by the Board in making its determination. A reviewing court must make some inquiry into the factual basis for the Commission's decision. But the inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.

*Peltier v. Booker*, 348 F.3d 888, 892–93 (10th Cir. 2003) (citations and internal punctuation omitted). "We review de novo the district court's decision to deny habeas relief," but in doing so we employ the same deferential standard applied by the district court. *Kell v. U.S. Parole Comm'n*, 26 F.3d 1016, 1019 (10th Cir. 1994).

## B. Evidence of the Attempted Rape

Because the victim's unavailability prevented Curtis from cross-examining her, he contends the board erred in relying on her hearsay statements regarding the attempted rape. Curtis also contends the board erred by relying on evidence of dismissed charges. We disagree.

*1. Right to Confrontation*

Although parole revocation hearings are not part of a criminal prosecution, and therefore do not require identical procedural protections, these hearings must provide the "minimum requirements of due process." *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). These requirements include "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* But the right to confront adverse witnesses is not absolute. *Kell*, 26 F.3d at 1020 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.5 (1973)). When live testimony is unavailable, "conventional substitutes" are permissible, "including affidavits, depositions, and documentary evidence." *Gagnon*, 411 U.S. at 782 n.5. Furthermore, the Federal Rules of Evidence do not apply, since the parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489.

Relying on *Crawford v. Washington*, 541 U.S. 36 (2004), Curtis asks us to apply the Sixth Amendment's right to confront witnesses in the parole setting. We cannot do so. Sixth Amendment rights are not applicable in parole revocation hearings because those hearings are not "criminal prosecutions." U.S. CONST. amend. VI. All the circuit courts that have expressly considered this issue agree. *See Valdivia v. Schwarzenegger*, 599 F.3d 984, 989 (9th Cir. 2010); *United States*

*v. Ray*, 530 F.3d 666, 668 (8th Cir. 2008); *United States v. Kelley*, 446 F.3d 688, 692 (7th Cir. 2006); *Ash v. Reilly*, 431 F.3d 826, 829–30 (D.C. Cir. 2005); *United States v. Rondeau*, 430 F.3d 44, 47–48 (1st Cir. 2005); *United States v. Kirby*, 418 F.3d 621, 627–28 (6th Cir. 2005); *United States v. Aspinall*, 389 F.3d 332, 342–43 (2d Cir. 2004). Because the Sixth Amendment's right to confrontation does not apply in this situation, neither do any Supreme Court cases dealing with it, specifically *Crawford*, 541 U.S. at 36.

Thus, we are left with the due process guarantees specified in *Morrissey*. 408 U.S. at 489. But *Morrissey* did not clarify how courts should determine when and how prisoners have a right to confront adverse witnesses at revocation hearings. A majority of circuit courts have adopted a balancing test to weigh the releasee's right to confrontation against the government's good cause in denying it. *See United States v. Lloyd*, 566 F.3d 341, 344–45 (3d Cir. 2009); *United States v. Williams*, 443 F.3d 35, 46 (2d Cir. 2006); *United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004); *United States v. Martin*, 382 F.3d 840, 846 (8th Cir. 2004); *Barnes v. Johnson*, 184 F.3d 451, 454 (5th Cir. 1999); *United States v. Comito*, 177 F.3d 1166, 1171–72 (9th Cir. 1999); *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). Under this approach,

> [t]he weight to be given the right to confrontation . . . depends on two primary factors: the importance of the hearsay evidence to the court's ultimate findings and the nature of the facts to be proven by the hearsay evidence. . . . [T]he more subject to question the accuracy and reliability of

the proffered evidence, the greater the releasee's interest in testing it by exercising his right to confrontation.

*Comito*, 177 F.3d at 1171.

We and four other circuits apply a different test, which allows the admission of hearsay evidence without a showing of cause for the declarant's absence if the evidence is sufficiently reliable. *See Kell,* 26 F.3d at 1020; *see also United States v. Kelley*, 446 F.3d 688, 692 (7th Cir. 2006); *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005); *Crawford v. Jackson*, 323 F.3d 123, 131 (D.C. Cir. 2003)*; United States v. McCallum*, 677 F.2d 1024, 1026 (4th Cir. 1982), *cert. denied*, 459 U.S. 1010 (1982). Examples of evidence possessing recognized indicia of reliability include: (1) the conventional substitutes for live testimony (e.g., affidavits, depositions, and documentary evidence), (2) statements falling under an established exception to the hearsay rule, (3) statements corroborated by detailed police investigative reports, and (4) statements corroborated by the releasee's own statements. *See Gagnon*, 411 U.S. at 782 n.5; *Prellwitz v. Berg*, 578 F.2d 190, 193 (7th Cir. 1978) (evidence falling under the "business record" hearsay exception is reliable); *Jackson*, 323 F.3d at 130–31 (evidence corroborated by observations in a police investigative report is reliable); *McCallum*, 677 F.2d at 1026 (evidence corroborated by the releasee's testimony is reliable).

Recent amendments to the Federal Rules of Criminal Procedure cast some doubt on our case law. In 2002, Federal Rule of Criminal Procedure 32.1 was revised and expanded, partly in response to *Morrissey* and *Gagnon*. Although Rule 32.1's title refers to probation and supervised release, but not parole, it is nonetheless relevant here because, as the Supreme Court noted in *Gagnon*, there isn't "any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation." 411 U.S. at 1759. Rule 32.1 grants the releasee at a revocation hearing an "opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." FED. R. CRIM. P. 32.1(b)(1)(B)(iii). According to the Advisory Committee notes to the 2002 amendment, these rules,

> address the ability of a releasee to question adverse witnesses at the preliminary and revocation hearings. Those provisions recognize that the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses. *The court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it. See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999); *United States v. Walker*, 117 F.3d 417 (9th Cir. 1997); *United States v. Zentgraf*, 20 F.3d 906 (8th Cir. 1994).

FED. R. CRIM. P. 32.1 advisory committee's note (2002) (emphasis added).

Curtis encourages us to abandon our reliability test in favor of a balancing test. We acknowledge that our *Kell* precedent is asynchronous with both the

majority of circuit courts and the subsequent amendment to Rule 32.1, which appears to endorse a balancing test.  But these two approaches often overlap.[2]  As an initial matter, all circuit courts agree *reliability* is a very important factor in determining the strength of a releasee's confrontation right.  For example, the Third Circuit has held that, while courts should normally apply a balancing test, occasions arise where "the releasee's interest in confrontation may be overwhelmed by the hearsay's reliability such that the Government need not show cause for a declarant's absence."  *United States v. Lloyd*, 566 F.3d 341, 345 (3d Cir. 2009).

Similarly, the Second Circuit recognizes that no balancing test is required for proffered out-of-court statements that are admissible under an established exception to the hearsay rule.  *United States v. Jones*, 299 F.3d 103, 113 (2d Cir. 2002).  Such hearsay exceptions are admissible because they possess "circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person . . . even though he may be available."  FED. R. EVID. 803 advisory committee's note (1972).  Only the Ninth Circuit has expressly held highly reliable evidence (such as a hearsay exception) cannot be used in a

---

[2]  For example, while the Sixth Circuit usually applies the reliability test, it has applied a balancing test on at least one occasion.  *Compare United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005) (applying the reliability test) *with United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998) (applying the balancing test).

revocation hearing unless it passes a balancing test. See *Valdivia v. Schwarzenegger*, 599 F.3d 984, 990 (9th Cir. 2010).[3]

We need not consider departing from our precedent here. The victim's statements in this case are admissible under either a balancing or reliability test. The statements are conveyed in a detailed case report prepared by one of the police officers who responded to the 911 call and who spoke with the victim shortly after the assault occurred. The report contains the officer's observations of the victim as follows: (1) she was sitting on the ground in a parking lot near the sidewalk; (2) she was not wearing shorts and was crying; (3) her left eye was swollen; and (4) she had multiple bruises on her arms, legs, chest, and back. The victim's appearance and injuries were consistent with her initial statements to the police officers: (1) before Curtis attempted to rape her, they were both sitting in a parking lot near the sidewalk; (2) he punched her twice in the left eye and forced her on her back; (3) he removed all her clothing except her bra; (4) he threatened to rape and kill her; and (5) he ran off after she screamed. The report also contains the statement of a witness who described hearing a scream and seeing a man running away from the victim.

---

[3] While the *Valdivia* decision survived an en banc vote, a dissent to the denial for rehearing observed the decision counterintuitively grants *parolees* greater rights than the Constitution affords *criminal defendants*. No. 08-15889, 2010 WL 3769237 (9th Cir. Sept. 28, 2010).

Thus, the police report provides indicia of reliability to the victim's statements. The police officer's observations are consistent with the victim's claim of attempted rape, and the witness's hearsay testimony is consistent with the victim's claim that she screamed during the rape. As a record kept in the ordinary course of business by the police department, the police report falls under a clearly established hearsay exception and bears recognized indicia of reliability. *See Prellwitz*, 578 F.2d at 193. And because it "contains internal corroboration of the [victim]'s version of events," it provides the parole board a basis for evaluating and crediting her credibility. *Jackson*, 323 F.3d at 130.

The police report, when combined with the testimony presented at both the preliminary interview and the parole revocation hearing, provided additional indicia of reliability to the victim's statement in several ways. First, the police officer who prepared the report was present at the revocation hearing to give testimony and to be cross examined. His testimony mirrored the record, corroborating the victim's statements.

Second, Curtis's testimony was contradicted by the police report. Curtis ultimately admitted to assaulting the victim while attempting to have sex with her. He also stated the assault occurred in a hotel room, which is contradicted by portions of the police report suggesting it occurred in the parking lot. In addition to memorializing the witness's observation of a man running away from the victim in the parking lot, the police report recorded the officer's observation of

personal items (including drinking cups, cigarette butts, an open pack of cigarettes, and two lighters) near the area where the victim claimed she was assaulted.

Third, serious inconsistencies in Curtis's testimony weakened his interest in confronting the victim. At the preliminary parole interview, Curtis claimed he had been arguing with the victim and punched her only after she struck him first. But at the revocation hearing, Curtis claimed physical intimacy preceded the assault. He also averred he assaulted the victim after she laughed at him for his sexual dysfunction.

Fourth, factual similarities between the victim's statements and Curtis's past felony-murder contributed to the former's credibility. In both events, Curtis became violent after a sexual dysfunction. At the preliminary interview, Curtis claimed the victim concocted the threat and sexual assault claims after learning about his original conviction. But the police report indicates the victim made these claims before learning Curtis's real identity. And while she initially knew that Curtis was a recent parolee, she did not appear to know the underlying facts of his original conviction.

Thus, Curtis's testimony unintentionally bolstered the victim's credibility. See *McCallum*, 677 F.2d at 1026. In sum, the police report, the police officer's testimony, and Curtis's own testimony provide sufficient indicia of reliability

under *Kell* to permit the admission of the victim's statements. *See Kell*, 26 F.3d at 1020.

We would reach the same result if we applied a balancing test. Because the credibility of the victim's statements are supported by other sources, Curtis has a diminished interest in testing those statements through confrontation. *See Comito*, 177 F.3d at 1171. In contrast, the government's "good cause for not allowing confrontation," *Morrissey*, 408 U.S. at 489, was that the victim could not be located. She had moved with no forwarding information; a subpoena was sent to her last known address but was returned for non-delivery. Both the assistant federal public defender representing Curtis and his investigator indicated they attempted to find the victim but were unsuccessful. The examiner found it probable the victim left the area without notice out of fear, although no direct evidence of this was presented. As a result, the government's good cause in denying confrontation is substantial—even if it can properly be said the government denied confrontation here in the first place. Instead of hindering Curtis's ability to test the victim's statements, the government did as much as it could to facilitate it. Only the parties' inability to locate the victim is responsible for her absence.

In such circumstances, the government's good cause for not making the victim available outweighs Curtis's decreased interest (in light of the reliability of the victim's statement) in exercising his right to confrontation.

-13-

## 2. *The Consideration of Dropped Charges*

Curtis's second objection to the admission of these statements is that they are evidence of crimes for which the state dropped all charges. He compares his situation to that of the petitioner in *McBride v. Johnson*, 118 F.3d 432 (5th Cir. 1997). In that case, the Fifth Circuit held a petitioner's rights were violated when an alleged rape victim's hearsay statements were admitted at his parole revocation hearing without giving him the opportunity to cross examine the victim.[4] *McBride* differs from this case in at least three important ways. First, the petitioner in *McBride* went to trial on rape charges and was acquitted by a jury, whereas Curtis had the attempted rape charges dropped as part of a plea agreement. Second, the victim in *McBride* was located in a distant city but not called to testify, whereas the victim in this instance could not be found. Additionally, in *McBride*, the credibility of the alleged victim was highly contested at trial, whereas the credibility of Curtis's victim was not called into question by anyone other than Curtis, and the police officer documented injuries that corroborated the victim's version of events. Therefore, the use of evidence of dismissed charges did not violate Curtis's rights, especially since the board need only find a violation by a preponderance of the evidence.

---

[4] In *McBride*, the Fifth Circuit assumed without examination that the petitioner's rights were based partly on the Sixth Amendment. 118 F.3d at 433. As we discussed previously, the right to confrontation in parole revocation hearings is based solely on due process. By describing *McBride*'s reasoning, we do not suggest otherwise.

Finally, Curtis challenges the decision to give him a local hearing, which allows for the presence of adverse witnesses, rather than an institutional hearing, which does not. But this objection was not raised before the district court in Curtis's petition for habeas corpus. "Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009). So we need not address this contention.

## C. Double Counting

Next, Curtis argues that, in relying on the 2002 sexual assault incident both to determine the guidelines range and to justify an above-guidelines sentence, the district court engaged in impermissible double counting. "Double-counting occurs when the Commission justifies a decision beyond the guidelines by relying on the factors for calculating offense severity under the guidelines." *Kell*, 26 F.3d at 1020. This did not happen here. It is permissible for the Board to recognize a *pattern of behavior* that makes the parolee dangerous to the public and then conclude the conduct was not sufficiently accounted for under the Guidelines. *Id.* Here, the board concluded Curtis had an established pattern of violence and sexual assault that was more troubling than the individual incidents. The decision to exceed the guidelines recommendation based on this pattern of behavior was not an abuse of discretion.

## D.  Denial of Evidentiary Hearing and Production of Audio Tapes

Finally, Curtis claims the district court abused its discretion in denying his request for an evidentiary hearing and in refusing to grant discovery concerning the audio tapes of the revocation hearing.  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  If a petitioner has shown good cause for discovery—that is, has set forth good reason to believe he may be able to demonstrate he is entitled to relief—the court may ensure adequate inquiry takes place.  *Id.* at 908–09.  Curtis has not suggested the tapes would reveal anything the district court did not consider.  He claims the tapes will show the victim's statements were admitted as hearsay without the opportunity for cross-examination, and the board relied on the alleged assault to assign an above-guidelines reconsideration date.  But the district court found—and we agree—that these allegations, even if true, do not entitle Curtis to relief.  Therefore this decision was not an abuse of discretion.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Curtis's application for a writ of habeas corpus.