# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 18, 2005       Decided December 16, 2005

No. 05-5092

WILBUR ASH,
APPELLEE

v.

EDWARD F. REILLY, JR., IN HIS OFFICIAL CAPACITY AS
COMMISSIONER,
UNITED STATES PAROLE COMMISSION, ET AL.,
APPELLANTS

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv02007)

---

*Mary B. McCord*, Assistant U.S. Attorney, argued the cause for appellants. With her on the briefs were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher*, Assistant U.S. Attorney at the time the briefs were filed.

*Catharine F. Easterly* argued the cause for appellee. With her on the brief was *Timothy P. O'Toole*. *Olinda Moyd* entered an appearance.

Before: HENDERSON and RANDOLPH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge.*[*]

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: On a petition for a writ of habeas corpus, a magistrate judge determined that the United States Parole Commission improperly revoked Wilbur Ash's parole. The principal question in this appeal, brought by Members of the Parole Commission, is whether the introduction of hearsay evidence at the parole revocation hearing deprived Ash of his right to confront adverse witnesses.

Ash pled guilty in the D.C. Superior Court to possessing cocaine with the intention of selling it. After he served part of his four-to-twelve year sentence, the Commission released him on parole. One of his parole conditions was that he not violate any law. In April 2002, about a year after his release, police in Baltimore, Maryland, arrested Ash for attacking Jerome Simms and Anthony Gardner with a dangerous weapon – a box cutter. At his trial on charges stemming from the attacks, a Baltimore judge entered a judgment of acquittal at the close of the prosecution's case. (Our record does not disclose the reasons for the judgment of acquittal.) The Parole Commission then had Ash arrested on a parole violator warrant and held pending a parole revocation hearing. The Commission determined it had probable cause to charge Ash with assault, aggravated assault, and assault with a deadly weapon. After conducting a parole revocation hearing, the Commission found by a preponderance of the evidence that Ash violated the conditions of his release. The Commission therefore revoked his parole.

---

[*] Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

Ash petitioned the district court for a writ of habeas corpus, claiming that the Commission's action violated the Constitution because the evidence against him consisted entirely of unreliable hearsay and because the Commission violated his right to confront adverse witnesses. The parties consented to having a magistrate judge decide the matter. The magistrate judge agreed with Ash's arguments, granted the writ, and ordered a new parole revocation hearing. *Ash v. Reilly,* 354 F. Supp. 2d 1, 9-10 (D.D.C. 2004) (*Ash I*), *recons. denied,* 354 F. Supp. 2d 11, 12 (D.D.C. 2005) (*Ash II*).

Before his parole revocation hearing, Ash received a form notifying him that the Commission intended to hear from two witnesses: a police officer who arrested Ash and the Court Supervision Officer assigned to Ash while he was on parole. Under the heading "Adverse Witnesses Requested by Subject," Ash's counsel filled in "Jerome Simms" and gave Simms's address in Baltimore. The Commission subpoenaed Simms, but he did not appear.

At the hearing, Ash's Court Supervision Officer testified but gave no evidence relating to the attacks. The other witness, police officer Ronald Shepke, testified as follows. While on patrol in a squad car, he received a call about a "cutting" nearby. He and the officer with him quickly arrived at the scene. They saw people "pointing" at an individual who was running down a dead-end street; the people were "screaming that . . . was him." Shepke and his colleague gave chase and cornered the suspect, who turned out to be Ash. Shepke then saw Ash throw an object over a fence. After arresting Ash, the officers recovered the object – a razor box cutter with a white handle. The officers took Ash back to the crime scene. Four or five people there identified him as the assailant and identified the box cutter as the weapon. Ash's attorney admitted that Ash carried a box cutter in connection with his job at a food store.

Simms sustained severe slash wounds to his face, neck, and back. He was taken to the hospital immediately after the attack. Shepke never interviewed Simms. Ash's counsel made much of the fact that the hospital report described Simms's injuries as "slash wounds with a machete . . .." The other victim, Anthony Gardner, had a single cut across his hand. Gardner gave Shepke a statement at the hospital identifying Ash as the attacker.

Shepke's testimony was consistent with his written report, on which the Commission also relied. The report stated that Simms and Ash were visiting Earline Gardner, along with other family members. Simms had children with Ms. Gardner, but Ash was her current love interest. The report stated further that Ash and Simms "had a disagreement which turned into a physical altercation," that the attack occurred during this altercation, and that Anthony Gardner incurred his injury when he tried to intervene.

Ash did not testify at the hearing, though he denied the Commission's charges. No other witnesses appeared. In light of his request and the Commission's subpoena, Ash's counsel insisted that Simms should appear before the Commission decided whether to revoke Ash's parole. Ash's counsel also argued that other adverse witnesses should be called. The hearing officer believed that because Simms did not testify and because the Commission did not rely on any information from him, Simms was not truly "adverse" to Ash.[1]

In reviewing Ash's petition for a writ of habeas corpus, the magistrate judge thought the Commission had revoked Ash's parole "based solely on hearsay testimony contained in a police

---

[1] The Commission's regulations define "adverse witnesses" as "witnesses who have given information upon which revocation may be based." 28 C.F.R. § 2.101(b).

report." *Ash I*, 354 F. Supp. 2d at 5.  This is not correct.  Some of the evidence –  the police report and the hospital report, for instance – was hearsay, but not all the evidence was.  Officer Shepke's testimony that he saw Ash running from the scene of the crime and saw him throw an object over the fence rested on Shepke's direct observations.   Also, Shepke's testimony describing the box cutter – a white handle, four to five inches long, holding a standard razor blade – rested on personal knowledge; Shepke and his fellow officer recovered the box cutter after seeing Ash throw something over the fence.  And Shepke's testimony that "there were several people out in front of the address we were responding to, pointing [at Ash] . . . and screaming that that was him," might have come within the "excited utterance" exception to the hearsay rule.  *See* FED. R. EVID. 803(2); *see also United States v. Alexander*, 331 F.3d 116, 121-24 (D.C. Cir. 2003).

Having misapprehended the nature of the evidence against Ash, the magistrate judge answered a question the case did not present – namely, whether a parolee's rights under the Due Process Clause are violated when the decision to revoke parole rests entirely on hearsay.  *Ash I*, 354 F. Supp. 2d at 10.  It is not clear whether that was the issue in *Crawford v. Jackson*, 323 F.3d 123 (D.C. Cir. 2003), a decision the magistrate judge declined to follow in light of *Crawford v. Washington*, 541 U.S. 36 (2004).  While several statements in *Jackson* indicated that the parole board relied only on a police report containing hearsay, 323 F.3d at 127-28, the court  pointed to other non-hearsay evidence – admissions of the parolee at the  revocation hearing – that corroborated portions of the police report, *id.* at 130.  The court recognized, as have other circuits, that parole revocation decisions may rely on hearsay.  *See id.* at 128-29 (citing cases).

Parole revocation proceedings are not criminal trials. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). "[F]ormal procedures and rules of evidence are not employed." *Gagnon v. Scarpelli*, 411 U.S. 778, 789 (1973); *id.* at 782. While the Due Process Clause imposes limits on the procedures used to revoke parole and entitles parolees to certain rights, *see, e.g., Black v. Romano*, 471 U.S. 606, 610 (1985); *Moody v. Daggett*, 429 U.S. 78, 85-86 (1976), the limitations and the rights are not coextensive with those applicable in criminal trials, *see, e.g., Scarpelli*, 411 U.S. at 787-90; *Maddox v. Elzie*, 238 F.3d 437, 445 (D.C. Cir. 2001).

For these reasons, the Supreme Court's decision in *Crawford v. Washington*, handed down after *Jackson*, did not deprive *Jackson* of its precedential effect, as the magistrate judge supposed. *Crawford v. Washington* was a criminal case decided under the Sixth Amendment. The Court held that admission of a testimonial statement made by a witness absent from trial violated the defendant's Sixth Amendment right to confront the witnesses against him, unless the witness is unavailable and "the defendant . . . had a prior opportunity to cross-examine [the witness]." 541 U.S. at 59. The other circuits that have considered whether *Crawford v. Washington* applies to parole revocation proceedings have concluded that it does not. *E.g.*, *United States v. Hall*, 419 F.3d 980, 985-86 (9th Cir. 2005); *United States v. Kirby*, 418 F.3d 621, 627-28 (6th Cir. 2005); *United States v. Martin*, 382 F.3d 840, 844 n.4 (8th Cir. 2004).

Even in criminal trials, *Crawford v. Washington* requires the exclusion only of "testimonial" hearsay, 541 U.S. at 68, not, as the magistrate judge seemed to think, the exclusion of all hearsay, *see Ash I*, 354 F. Supp. 2d at 7. By "testimonial" the Court apparently meant "*ex parte* in-court testimony or its functional equivalent . . . such as affidavits, custodial

examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," 541 U.S. at 51 (internal quotation marks omitted), and "police interrogations," *id.* at 68.[2]

We therefore believe the magistrate judge should have followed *Crawford v. Jackson,* as must we. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc). In *Jackson*, the parolee claimed, among other things, that the parole board violated his due process rights by revoking his parole on the basis of a "police investigative report containing hearsay" without "allow[ing] him to cross-examine the author of the police investigative report." 323 F.3d at 125. The *Jackson* court concluded that "given the indicia of reliability of the police investigative report, the Board's reliance on the hearsay evidence did not render its revocation decision so lacking in support that it was fundamentally unfair." *Id.* at 131. The court added that the parolee "failed to show any prejudice from his inability to cross-examine the police officer who wrote the report." *Id.*

Under *Jackson*, the question is whether the decision to revoke parole is "either totally lacking in evidentiary support or . . . so irrational as to be fundamentally unfair." *Jackson*, 323 F.3d at 129 (quoting *Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002)) (internal quotation marks omitted). The court must

---

[2] The Court has granted certiorari in two cases to determine the meaning of "testimonial." *See Hammon v. State*, 829 N.E.2d 444 (Ind. 2005) (considering application of the Confrontation Clause to statements made to officers responding to a crime scene), *cert. granted*, 126 S. Ct. 552 (2005); *State v. Davis*, 111 P.3d 844 (Wash. 2005) (considering application of the Confrontation Clause to excited utterances made in 911 calls), *cert. granted*, 126 S. Ct. 547 (2005).

gauge for itself the "reliability of the particular hearsay evidence" on which the Commission based its decision. *Id*. With regard to adverse witnesses, the absence of an adverse witness does not violate a parolee's due process rights if "the hearing officer specifically finds good cause for not allowing confrontation." *Morrissey*, 408 U.S. at 489. Even if there is no good cause, a parolee is not entitled to a new parole hearing unless he shows "prejudice from his inability to cross-examine" the missing witness. *See Jackson*, 323 F.3d at 131; *see also Maddox*, 238 F.3d at 444. Whether a witness's absence is prejudicial depends on the quality and quantity of nonhearsay and reliable hearsay evidence supporting the decision to revoke parole. *See Maddox*, 238 F.3d at 244-45.

The magistrate judge thought the Supreme Court's opinion in *Crawford v. Washington* undermined *Jackson* because the Court wrote that judicial determinations of the reliability of hearsay evidence are "'unpredictable'" and because the concept of reliability is "'amorphous.'" *Ash I*, 354 F. Supp. at 9 (quoting *Crawford v. Washington*, 541 U.S. at 63). This overstates the reach of the Court's opinion. Whatever may be the case when "testimonial" hearsay is introduced in a criminal trial, the concept of reliability cannot be so readily dismissed when nontestimonial hearsay is offered, especially in noncriminal proceedings. Time-honored exceptions to the hearsay rule, such as those found in FED. R. EVID. 803, rest on the idea that "under appropriate circumstances, a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available." FED. R. EVID. 803 advisory committee's note; *see also* 5 JOHN HENRY WIGMORE, EVIDENCE § 1422, at 253 (Chadbourn rev. 1974) ("[C]ircumstantial probability of trustworthiness is found in a variety of circumstances sanctioned by judicial practice; and it is usually from one of these salient circumstances that the [hearsay] exception takes its name.").

Ash's habeas petition claimed not only that he was entitled to confront Simms and other adverse witnesses, but also that the evidence adduced at the hearing was insufficient to support the Commission's action. Because the magistrate judge should have, but did not, follow *Jackson* in evaluating these claims, we will remand for further proceedings consistent with this opinion.

*Vacated and remanded.*