HUMPHREYS, J, with whom ALSTON, J.,
joins, dissenting.
I respectfully dissent from the judgment and analysis of my colleagues in the majority for two reasons. First, I believe that the circuit court erred in failing to permit Henderson to confront and cross-examine the witnesses accusing him of violating the terms and conditions of his probation or alternatively erred in its failure to find good cause for not doing so. Second, I believe that the courts of the Commonwealth should adopt a balancing test to determine when “good cause” exists for excusing the prosecution from producing such witnesses for cross-examination.
In this case, the Commonwealth asked the circuit court to revoke Henderson’s probation based upon his failure to be of good behavior. Henderson was not convicted of any new criminal offenses, nor at the time of the hearing in this case was he even charged with any. In fact, the Commonwealth essentially took the position that Henderson committed new crimes based upon one incident in which no charges were ever *669 brought and a second incident in which the charges were dropped by the Commonwealth. Thus, at no time did those who asserted criminal activity on the part of Henderson testify under oath, much less were they subjected to prior cross-examination concerning their accusations against Henderson.
Instead, the Commonwealth simply called Detective Ortiz as its sole witness, whose testimony was primarily a recitation of the hearsay statements of potential witnesses contained in her investigative report in connection with the two incidents never prosecuted.
I recognize that a probation revocation hearing is not a trial and hearsay is generally admissible at such hearings. I further recognize that generally, “[t]he admissibility of evidence is within the discretion of the trial court, and we review its decision only for abuse of discretion.” Dickens v. Commonwealth, 52 Va.App. 412, 417, 663 S.E.2d 548, 550 (2008) (citing Blain v. Commonwealth, 7 Va.App. 10, 16, 371 S.E.2d 838, 842 (1988)). “However, whether appellant’s due process right of confrontation was violated is a question of constitutional law and is reviewed de novo.” Id. (citing Michels v. Commonwealth, 47 Va.App. 461, 465, 624 S.E.2d 675, 678 (2006)).
As the majority has pointed out, “both the United States Supreme Court and this Court have ... held that probation revocation hearings are not a stage of criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution.” Id. (citing Davis v. Commonwealth, 12 Va.App. 81, 84, 402 S.E.2d 684, 686 (1991)); see also Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759-60, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599-00, 33 L.Ed.2d 484 (1972). As such, “the United States Supreme Court has stated that in revocation hearings ‘formal procedures and rules of evidence are not employed,’ Scarpelli, 411 U.S. at 789 [93 S.Ct. at 1763], and that the process of revocation hearings ‘should be flexible enough to consider evidence ... that would not be admissible in an adversary *670 criminal trial,’ Morrissey, 408 U.S. at 489 [92 S.Ct. at 2604].” Dickens, 52 Va.App. at 421, 663 S.E.2d at 552.
However, “[probation revocation, like parole revocation, ... does result in a loss of liberty. Accordingly ... a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey v. Brewer.” Scarpelli, 411 U.S. at 782, 93 S.Ct. at 1759-60; see Davis, 12 Va.App. at 84, 402 S.E.2d at 686. Accordingly, the United States Supreme Court held in Morrissey that due process requires that, even in a revocation hearing, the defendant has “the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).” 408 U.S. at 489, 92 S.Ct. at 2604.[6] “Thus, hearsay evidence, which would normally be inadmissible in a criminal trial, may be admitted into evidence in a revocation hearing based on the court’s discretion,” Dickens, 52 Va.App. at 421, 663 S.E.2d at 552, provided that the circuit court “specifically finds good cause for not allowing confrontation,” Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604 (emphasis added).[7]
In this case, I note initially that the circuit court never even addressed the issue of whether “good cause for not allowing *671 confrontation” existed, much less made a specific finding that it did as required by Morrissey, a point simply ignored by the majority.[8] Moreover, since the United States Supreme *672 Court’s decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and its progeny, the landscape of the Confrontation Clause of the Sixth Amendment has changed dramatically. Although the Sixth Amendment is not at issue in this case, neither our Supreme Court nor this Court has addressed what constitutes “good cause” to deny the right of confrontation in revocation hearings provided by the Fourteenth Amendment’s due process protections in light of the evolution of the Confrontation Clause of the Sixth Amendment. The majority opinion continues to avoid addressing this issue, leaving the circuit courts with no guidance on how to proceed in such hearings. For the reasons that follow, I believe that the Commonwealth should adopt the balancing test used in a number of our sister states because, of the two tests in use in other jurisdictions, the balancing test is more consistent with the current interpretation of the right of confrontation found in Crawford and its progeny.
I. Testimonial Evidence & the Due Process Right to Confrontation
“In Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354 [1365-66], 158 L.Ed.2d 177 (2004), [the United States Supreme Court] held that [the Confrontation Clause of the Sixth Amendment] bars ‘admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.’ ” Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006). Therefore, “[o]nly [testimonial statements] cause the declarant *673 to be a ‘witness’ within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.” Id. (internal citation omitted). See also Michigan v. Bryant, — U.S. —, 131 S.Ct. 1143, 1153, 179 L.Ed.2d 93 (2011) (“We therefore limited the Confrontation Clause’s reach to testimonial statements .... ” (citing Crawford, 541 U.S. at 68 [124 S.Ct. at 1373-74])).
Because the right to confrontation in revocation hearings is more relaxed than that of the Sixth Amendment’s Confrontation Clause, see Dickens, 52 Va.App. at 421-22, 663 S.E.2d at 552 (“the Sixth Amendment right of confrontation is a more rigorous right than the due process requirement in a revocation context because a revocation hearing is not a ‘criminal proceeding’ and the full panoply of rights due a defendant ‘does not apply to [probation] revocation’ ” (alteration in original) (quoting Morrissey, 408 U.S. at 480, 92 S.Ct. at 2599-00)), it naturally follows that the due process guarantees of the Fourteenth Amendment cannot exceed those that the Confrontation Clause requires in the context of a trial. As such, any right to confrontation conferred by the requirements of due process can likewise only apply to “testimonial hearsay.” Thus, before determining whether “good cause” existed to excuse denying Henderson the right to confront his accusers, we must first determine whether the testimony of Ortiz constitutes “testimonial hearsay.” The majority is silent on the issue of whether or not a due process right of confrontation attached to Ortiz’s testimony in the first instance and thus I begin my analysis there.
The United States Supreme Court has not provided a precise definition of what is “testimonial.” Instead, the Court provided in Crawford that “[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.” 541 U.S. at 51, 124 S.Ct. at 1364. Further, “[statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.” Id. at 52, *674 124 S.Ct. at 1364. “In sum, even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class.” Id. at 53, 124 S.Ct. at 1365. Although the Court declined to define what it meant by “interrogation” it provided that “[w]e use the term ‘interrogation’ in its colloquial, rather than any technical legal, sense,” and further that “one can imagine various definitions ..., and we need not select among them in this case.” Id. at 53 n. 4, 124 S.Ct. at 1365 n. 4.
Later, in Davis, the Court
further clarified what constitutes a “testimonial” statement: “Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.”
Crawford v. Commonwealth, 281 Va. 84, 98, 704 S.E.2d 107, 116 (2011) (emphasis added) (quoting Davis, 547 U.S. at 822, 126 S.Ct. at 2273-74). The Court also explained that when it said in Crawford that
“interrogations by law enforcement officers fall squarely within [the] class” of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator. The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial.
Davis, 547 U.S. at 826, 126 S.Ct. at 2276 (alteration in original) (quoting Crawford, 541 U.S. at 53, 124 S.Ct. at 1365). Thus, “a statement is testimonial if it is given while ‘[t]here was no *675 emergency in progress,’ and is made for the purpose of ‘establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.’ ” Crawford, 281 Va. at 98, 704 S.E.2d at 116 (alterations in original) (quoting Davis, 547 U.S. at 829, 822, 126 S.Ct. at 2277, 2273-74).
The United States Supreme Court recently addressed the Sixth Amendment Confrontation Clause in Bryant, 131 S.Ct. 1143, and further expanded upon what constitutes a police interrogation which “primary purpose” is “to enable police assistance to meet an ongoing emergency.” Id. at 1150. In Bryant, the Court held that the statements of a dying man made to the police were non-testimonial when the officers asked the victim questions after finding him shot at a gas station and did not know the shooting location, the location of the assailant or whether the assailant posed a continuing threat. The Court noted that, “the most important instances in which the [Confrontation] Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial.” Id. at 1155. However, the Supreme Court went on and explained,
[w]hen, as in Davis, the primary purpose of an interrogation is to respond to an “ongoing emergency,” its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause. But there may be other circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony. In making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant. Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause.
Id. (emphasis in original).
“To determine whether the ‘primary purpose’ of an interrogation is ‘to enable police assistance to meet an ongoing emergency,’ which would render the resulting statements non- *676 testimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties.” Id. at 1156 (quoting Davis, 547 U.S. at 822, 126 S.Ct. at 2273-74). In this objective analysis, a court may consider the “statements and actions of both the declarant and interrogators” and “the circumstances in which an encounter occurs” to determine the primary purpose of the interrogation. Id. at 1160.
With respect to the crime that Henderson allegedly took part in on October 2, 2009, Detective Ortiz testified that after she was assigned to the case, she called the victim and the victim’s daughter to review the case. The October 6 statements of the victim and the victim’s daughter to Ortiz as recorded by her in her investigative report were the basis of the testimony that Ortiz gave at the revocation hearing regarding the October 2 crime. From the record, it is clear that this testimony came from the formal setting of a police officer investigating a past crime by seeking facts regarding each alleged robbery for the purpose of apprehending and prosecuting the perpetrator. Id. (“Formality is not the sole touchstone of our primary purpose inquiry because, although formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to ‘establish or prove past events potentially relevant to later criminal prosecution,’ [Davis, 547 U.S.] at 822 [126 S.Ct. at 2274], informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent.”). Ortiz’s interrogation of the victim and the victim’s daughter in the first incident occurred four days after the alleged crime and after a full preliminary investigation was conducted. Further, the interviews took place over the phone, further demonstrating that there was clearly no ongoing emergency and that the statements were taken for the express purpose of possible criminal prosecution. Thus, Ortiz’s statements at trial relating to the October 2 incident were clearly testimonial hearsay.
Detective Ortiz also testified concerning an alleged home invasion robbery that took place on the night of October 8, 2009. Ortiz testified from her report that she met with the *677 victim at the police station regarding the incident. Although this investigation took place the same evening of the alleged crime, it occurred away from the scene of the crime in the safety of the police station. Further, Ortiz was only present because of the supposed participation of Henderson in the crime. Thus, the information Ortiz received from the victim was not provided during an ongoing emergency in order to enable police to respond to it; rather, Ortiz was seeking to determine what had already occurred and to preserve it for later use in connection with criminal court proceedings. Crawford, 281 Va. at 98, 704 S.E.2d at 116. As such, Ortiz’s testimony relating to the second incident also constituted testimonial hearsay, to which the limited Fourteenth Amendment due process right of confrontation applies.
II. The Appropriate Test for “Good Cause”
As discussed supra, a probationer at a revocation hearing has the “right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).... ” Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604 (emphasis added). As the majority correctly points out, different jurisdictions are split between two tests in order to determine whether to admit testimonial hearsay evidence under the “good cause” exception. In Reyes v. State, 868 N.E.2d 438, 441 (Ind.2007), the Indiana Supreme Court explained both methods:
In one, the trial court employs a balancing test that weighs the probationer’s interest in confronting a witness against the interests of the State in not producing the witness. E.g., United States v. Martin, 382 F.3d 840, 844-45 (8th Cir.2004). In the balancing test, the State is required to show good cause for denying confrontation. See United States v. Rondeau, 430 F.3d 44, 48 (1st Cir.2005). In another test, the trial court determines whether the evidence reaches a certain level of reliability, or if it has a substantial guarantee of trustworthiness. E.g., United States v. Kelley, 446 F.3d 688, 692 (7th Cir.2006). The requirement, found in Morrissey, 408 U.S. at 489 [92 S.Ct. *678 at 2604], that the trial court find “good cause” before denying the right to confrontation plays an explicit role when a trial court performs a balancing test; however, this does not mean that Morrissey’s good cause requirement is not addressed in the substantial trustworthiness test.... [T]he substantial trustworthiness test implicitly incorporates good cause into its calculus.
See also People v. Breeding, 284 Mich.App. 471, 485, 772 N.W.2d 810, 818 (2009) (quoting Reyes, 868 N.E.2d at 441).
In assessing the probationer’s interest in confronting a witness under the balancing test, a court must consider that
although every [probationer] has the right to confrontation, this right is not static, but is of greater or lesser significance depending on the circumstances. [United States v.] Martin, 984 F.2d [308,] 310-11 [ (9th Cir.1993) ]. The weight to be given the right to confrontation in a particular case depends on two primary factors: the importance of the hearsay evidence to the court’s ultimate finding and the nature of the facts to be proven by the hearsay evidence. See id. at 311. As the Martin court emphasized, “the more significant particular evidence is to a finding, the more important it is that the [probationer] be given an opportunity to demonstrate that the proffered evidence does not reflect Verified fact.’ ” Id. So, too, the more subject to question the accuracy and reliability of the proffered evidence, the greater the [probationer’s] interest in testing it by exercising his right to confrontation.
United States v. Comito, 177 F.3d 1166, 1171 (9th Cir.1999). However,
[i]n the balancing process, the [probationer’s] interest in confronting the declarant is entitled to little, if any, weight where the declarant’s absence is the result of intimidation by the [probationer]: Where a defendant has procured the declarant’s unavailability “by chicanery, ... by threats, ... or by actual violence or murder,” the defendant is deemed to have “waived his sixth amendment rights and, a fortiori, *679 his hearsay objection” to the admission of the declarant’s statements.
United States v. Williams, 443 F.3d 35, 45 (2d Cir.2006) (quoting United States v. Mastrangelo, 693 F.2d 269, 272-73 (2d Cir.1982), cert. denied, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984)).
“In assessing the government’s position, the [court] should consider, first, ‘the explanation the government offers of why confrontation is undesirable or impracticable’ and, second, ‘the reliability of the evidence which the government offers in place of live testimony.’ ” Martin, 382 F.3d at 845 (quoting United States v. Bell, 785 F.2d 640, 643 (8th Cir.1986)). “ ‘Where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause.’ ” Id. (quoting Bell, 785 F.2d at 643). “ Where, on the other hand, ... the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.’” Id. (quoting Bell, 785 F.2d at 643).
On the other hand, under the reliability test “the trial court determines whether the evidence reaches a certain level of reliability, or if it has a substantial guarantee of trustworthiness,” and “the substantial trustworthiness test implicitly incorporates good cause into its calculus.” Reyes, 868 N.E.2d at 441 (citations omitted); see also Kelley, 446 F.3d at 692; Crawford v. Jackson, 323 F.3d 123, 131 (D.C.Cir.2003); Hampton v. State, 203 P.3d 179, 184-85 (Okla.Crim.App.2009). “Hearsay evidence has been held admissible in federal probation and parole revocation proceedings where the evidence is ‘demonstrably reliable.’ ” Turner v. Commonwealth, 278 Va. 739, 742, 685 S.E.2d 665, 667 (2009) (quoting United States v. McCollum, 677 F.2d 1024, 1026 (4th Cir.1982)). In Curtis v. Chester, 626 F.3d 540, 545 (10th Cir.2010), the court noted the following “[e]xamples of evidence possessed] recognized indicia of reliability”:
*680 (1) the conventional substitutes for live testimony (e.g., affidavits, depositions, and documentary evidence), (2) statements falling under an established exception to the hearsay rule, (3) statements corroborated by detailed police investigative reports, and (4) statements corroborated by the releasee’s own statements. See [Scarpelli ], 411 U.S. at 782 n. 5 [93 S.Ct. at 1760 n. 5]; Prellwitz v. Berg, 578 F.2d 190, 193 (7th Cir.1978) (evidence falling under the “business record” hearsay exception is reliable); Jackson, 323 F.3d at 130-31 (evidence corroborated by observations in a police investigative report is reliable); McCallum, 677 F.2d at 1026 (evidence corroborated by the releasee’s testimony is reliable).
See also United States v. McCormick, 54 F.3d 214, 224 (5th Cir.1995) (concluding that “[substantial evidence enhanced the reliability of the information contained in the ... report”); United States v. Garcia, 111 F.2d 1369 (9th Cir.1985) (holding evidence reliable where defendant’s in-court statements supported the evidence and he pled guilty on numerous charges before several different judges). In United States v. Lloyd, 566 F.3d 341, 345 (3d Cir.2009), the court noted,
[h]earsay given under oath, Comito, 177 F.3d at 1171, Crawford, 323 F.3d at 129, replete with detail, United States v. Bell, 785 F.2d 640, 644 (8th Cir.1986); Crawford, 323 F.3d at 129, or supported by corroborating evidence, Kelley, 446 F.3d at 692; Martin, 382 F.3d at 846, has been recognized as reliable. Conversely, out-of-court statements reflecting an adversarial relationship with the accused, Comito, 177 F.3d at 1171, or containing multiple layers of hearsay, United States v. Fennell, 65 F.3d 812, 813 (10th Cir.1995); Crawford, 323 F.3d at 129, have been recognized as unreliable.
Although the Supreme Court of the United States has yet to review either test, other jurisdictions have found both tests to be proper under current constitutional jurisprudence. Virginia has not expressly adopted either of the tests. Nevertheless, the Fourteenth Amendment’s due process protections include a right to confrontation in revocation hearings that the courts of the Commonwealth must protect and we should *681 provide some direction to the circuit courts of the methodology for doing so. See Morrissey 408 U.S. at 480, 92 S.Ct. at 2599. Although this right contains the “good cause” exception not found in that of the Confrontation Clause of the Sixth Amendment, see Dickens, 52 Va.App. at 421-22, 663 S.E.2d at 552, it is important to understand the evolution of the Sixth Amendment’s Confrontation Clause in order to determine the extent to which even a diluted version of the right of confrontation applies in revocation hearings. In Crawford v. Washington and the several Sixth Amendment cases that followed it, the Supreme Court clearly and emphatically shifted away from using reliability as a factor in any Sixth Amendment Confrontation Clause analysis. If “reliability” no longer has any place in a Sixth Amendment inquiry, I fail to see how it retains any vitality even in its separate and diluted due process guise. Thus, I believe that in the Commonwealth, the “good cause” exception to providing confrontation in revocation hearings should rest upon the balancing test.
Prior to Crawford, 541 U.S. 36, 124 S.Ct. 1354, Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), controlled the Sixth Amendment Confrontation Clause jurisprudence through the application of an “indicia of reliability” test. Crawford expressly overruled Roberts. In Roberts, the Supreme Court specifically held that
when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate “indicia of reliability.” Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
448 U.S. at 66, 100 S.Ct. at 2539. Thus, under Roberts, the Confrontation Clause was satisfied if the witness was unavailable and the hearsay statement was sufficiently inherently reliable to satisfy a long-standing exception to the rule barring hearsay testimony.
*682 The Supreme Court began its retreat from excusing confrontation if the hearsay evidence was subjectively reliable in Lilly v. Virginia, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), where it held that only evidence that could be classified within a “firmly rooted” hearsay exception was sufficiently trustworthy to excuse confrontation and such exceptions could only be considered
“firmly rooted” if, in light of “longstanding judicial and legislative experience,” Idaho v. Wright, 497 U.S. 805, 817, 110 S.Ct. 3139 [3147], 111 L.Ed.2d 638 (1990), it “rests [on] such [a] solid foundation that admission of virtually any evidence within [it] comports with the ‘substance of the constitutional protection.’ ” Roberts, 448 U.S. at 66 [100 S.Ct. at 2539] (quoting Mattox [v. United States ], 156 U.S. [237,] 244 [15 S.Ct. 337, 340, 39 L.Ed. 409 (1895) ]). This standard is designed to allow the introduction of statements falling within a category of hearsay whose conditions have proven over time “to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath” and cross-examination at a trial. Mattox, 156 U.S. at 244, 15 S.Ct. at 340.
Id. at 126, 119 S.Ct. at 1895 (first three alterations in original). “Established practice, in short, must confirm that statements falling within a category of hearsay inherently ‘carry special guarantees of credibility’ essentially equivalent to, or greater than, those produced by the Constitution’s preference for cross-examined trial testimony.” Id. (emphasis added) (citation omitted). I note that in Lilly, the United States Supreme Court reversed both the Virginia Supreme Court and the previous precedent of this Court in holding that accomplice statements admitted under the hearsay exception for statements made against penal interest “are not within a firmly rooted exception to the hearsay rule.” Id. at 134, 119 S.Ct. at 1899.
However, the Supreme Court overruled the so-called “indicia of reliability” test set forth in Roberts and Lilly in
Crawford v. Washington, 541 U.S. 36 [124 S.Ct. 1354, 158 L.Ed.2d 177] (2004), [and] held that the Confrontation *683 Clause applies to testimonial hearsay and in order for such hearsay to be admissible, the witness must be unavailable and the accused must have had an opportunity for cross-examination. Id. at 68 [124 S.Ct. at 1373-74]. The Court noted that the Confrontation Clause targeted a specific “evil,” namely the “civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused.” Id. at 49 [124 S.Ct. at 1362-63]. The Court reasoned that the Confrontation Clause protects against “testimonial” statements because, it only “applies to “witnesses’ against the accused—in other words, those who ‘bear testimony.’ ” Id. at 51 [124 S.Ct. at 1364] (quoting 2 N. Webster, An American Dictionary of the English Language (1828)).
Dickens, 52 Va.App. at 418, 663 S.E.2d at 551. “The [Supreme] Court stated ‘[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.’ ” Crawford, 281 Va. at 97, 704 S.E.2d at 115 (quoting Crawford, 541 U.S. at 68-69, 124 S.Ct. at 1374).
Following its decision in Crawford v. Washington, the Supreme Court has continued to demonstrate its unwillingness to allow prosecutors to avoid defendants’ Confrontation Clause rights regardless of the reliability of the testimony itself. In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the Court declined to create a forensic evidence exception to their test in Crawford v. Washington, holding that a forensic laboratory report which was prepared for a criminal trial was still testimonial for Confrontation Clause purposes. Id. at —, 129 S.Ct. at 2532. Most recently, in Bullcoming v. New Mexico, — U.S. —, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), the Supreme Court held that a forensic laboratory report that was obtained using standard procedures and was certified by a technician could not be introduced through a different technician who did not personally perform the analysis that was contained in the report. Id. at —, 131 S.Ct. at 2710. In reaching its *684 holding, the Court rejected the New Mexico Supreme Court’s contention that the original technician was a “ ‘mere scrivener’ ” who “ ‘simply transcribed the result[ ] generated by the gas chromatograph machine,’ presenting no interpretation and exercising no independent judgment.” Id. at —, 131 S.Ct. at 2713. Instead, the Court reasoned that
[the original technician] certified that he received Bullcoming’s blood sample intact with the seal unbroken, that he checked to make sure that the forensic report number and the sample number “corresponded],” and that he performed on Bullcoming’s sample a particular test, adhering to a precise protocol. He further represented, by leaving the “[r]emarks” section of the report blank, that no “circumstance or condition ... affectfed] the integrity of the sample or ... the validity of the analysis.” These representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross-examination.
Id. at —, 131 S.Ct. at 2714 (internal citations to the record omitted).
The Supreme Court has also held that “the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court.” Melendez-Diaz, 557 U.S. at —, 129 S.Ct. at 2540. This is consistent with the balancing test, which requires the Commonwealth to affirmatively establish good cause why it could not produce the witness. The reliability test, on the other hand, can be satisfied through the testimony itself if the testimony is inherently reliable and only “implicitly incorporates good cause into its calculus.” Reyes, 868 N.E.2d at 441 (citations omitted). Thus, in most instances under the reliability test, the Commonwealth’s burden specified in Morrissey is effectively removed from the analysis.
A. Applying the Balancing Test
Under the balancing test, Henderson had a very strong interest in confronting the witnesses against him, and the Commonwealth failed to provide any reasons why they could not present the actual witnesses against him.
*685 Henderson’s interest in confronting the witnesses against him was extremely high, because the statements made by the witnesses were “ ‘detailing the specific criminal wrongdoing of the defendant’ ” in crimes that he denied any involvement in. Dickens, 52 Va.App. at 419, 663 S.E.2d at 551 (quoting Jasper v. Commonwealth, 49 Va.App. 749, 755, 644 S.E.2d 406, 410 (2007)). These allegations therefore directly implicated Henderson in violating the terms of his probation. Specifically, Henderson was alleged to violate the terms of his probation by failing to “obey all Federal, State and local laws and Ordinances” and “report any arrest, including traffic tickets, within 3 days to the Probation and Parole Officer.” Since the probation officer was not called as a witness, the hearsay testimony of Ortiz was dispositive of any finding with respect to the alleged violations.
Further, Detective Ortiz’s testimony was a detailed recitation of the facts given to her by the unsworn verbal allegations of witnesses to two alleged crimes. Comito, 177 F.3d at 1171 (“Unsworn verbal allegations are, in general, the least reliable type of hearsay....”). The only other evidence in the record supporting Ortiz’s testimony was what the majority characterizes as Henderson’s corroboration of what he told the alleged victim of the first crime and his daughter regarding his phone—that he lends his phone to a lot of people, and he could not remember whom he had loaned it to that day. Further, while Henderson’s mother testified at trial, her testimony of the facts regarding where Henderson was on the night of the alleged second crime was adverse to both Henderson’s and Ortiz’s testimony, and there is no additional evidence in the record corroborating Ortiz’s testimony regarding the witnesses’ statements she testified to. Curtis, 626 F.3d at 547 (“Because the credibility of the victim’s statements are supported by other sources, Curtis has a diminished interest in testing those statements through confrontation.” (citing Comito, 177 F.3d at 1171)). Thus, the hearsay testimony was indisputably important to the circuit court’s finding of a violation.
*686 On the other hand, the Commonwealth provided no reason to the circuit court as to why it could not produce the witnesses for cross-examination and thus the circuit court had nothing to “balance” against Henderson’s right to confront his accusers. There is no evidence in the record that the Commonwealth made any good faith attempt to subpoena the witnesses or otherwise produce them in court. In addition, there is no evidence in the record that the witnesses had moved or that they could not be located. Id. at 547-48 (“In contrast, the government’s ‘good cause for not allowing confrontation,’ Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604, was that the victim could not be located.”).
The majority contends that this case is similar to Bell, 785 F.2d 640. However, Bell is inapt to this analysis for several reasons. In Bell, which predates the changes wrought by Crawford, the court stated it was employing a “balancing test” where the second prong, the government’s burden, could be established under different circumstances:
First, the court should assess the explanation the government offers of why confrontation is undesirable or impractical. For example, the government might contend that live testimony would pose a danger of physical harm to a government informant, see Birzon v. King, 469 F.2d 1241, 1244 (2d Cir.1972), or, as suggested by Gagnon, that procuring live witnesses would be difficult or expensive.
A second factor that must be considered, and one that has been focused upon by a number of courts, is the reliability of the evidence which the government offers in place of live testimony. See, e.g., United States v. Burkhalter, 588 F.2d 604, 607 (8th Cir.1978); United States v. McCallum, 677 F.2d 1024, 1026-27 (4th Cir.), cert. denied, 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982). Thus, where the government demonstrates that the burden of producing five testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause. Where, on the other hand, the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay *687 evidence that bears indicia of reliability, the probationer is entitled to confrontation.
Id. at 643. However, in application, the second factor was actually applied much like the reliability test. Id. For example, the majority in this case bolsters its own argument using the court’s holding in Bell that a police report was admissible. In actuality, the Bell court held that the police report, which may have been unreliable on its own, was admissible because the defendant’s own admissions corroborated the police report to the point to which it became reliable. Id. at 643-44. Thus, in addition to reliability being a suspect consideration post-Crawford, the Bell court actually failed to consider either side of the balancing test; it made no finding in regard to the defendant’s interest in confronting the witness or the state’s interest in not producing the witness. In fact, the court expressly declined to render a judgment on the government’s interest in not producing the witness. Id. at 644 (“considerable expense would no doubt have been involved had the government secured, either under subpoena or voluntarily, the personal appearance of the Kansas officers [who wrote the police report]. Whether this expense, coupled with whatever degree of customary reliability can be imputed to arrest reports, would constitute “good cause” for purposes of dispensing with the right of confrontation is a question we need not reach in the present case, because Bell’s own admissions sufficiently corroborate the police reports to make it clear that they were indeed reliable.”).[9]
The majority suggests the balancing test was satisfied in Henderson’s case because the witnesses were intimidated and, thus, should be excused from testifying. In the first place, the Commonwealth asserted no such reason to the circuit court for *688 rejecting Henderson’s right to cross-examine his accusers. In the second place, the circuit court made no such specific factual finding as required by Morrissey and finally, it is not a proper role for this Court to make any factual finding of “good cause” where both the circuit court and the prosecutor were completely silent on the matter below. While I do not dispute that the Commonwealth can use a fear of retaliation or intimidation generated by a defendant or his agents as the basis for a “good cause” exception to providing confrontation, the record does not support the majority’s sua sponte conclusion in that regard. The circuit court made no finding that such was the case nor did the prosecutor even offer that as an explanation as required by the balancing test. Moreover, and contrary to the statement of the majority, the record does not support a conclusion that Henderson himself or through an agent, attempted to intimidate or discourage any witnesses from testifying. In the first incident, the alleged victim merely informed Ortiz that he “really didn’t want to file charges because people knew his daughter, and they all were in the neighborhood, they live in the same neighborhood, they knew where he lived.” Without more, such inchoate concerns about pursuing prosecution do not begin to overcome Henderson’s substantial interest in confronting the witnesses against him, nor is it evidence as to why the Commonwealth could not produce the victim or his daughter at the probation revocation hearing. With respect to the second incident, Ortiz testified that the alleged victim and his mother refused to testify because they were scared of retaliation. However, the only evidence of retaliation in the record involved the second victim’s mother who informed Ortiz that “the day before the court she heard gunshots around her house, and that really scared her.” However, nowhere in the record did Ortiz testify that the witness actually believed the gunshots were in any way connected with Henderson. While Ortiz testified that she had heard one of the other individuals involved in the second crime refer to a gun in a telephone conversation with his girlfriend, the Commonwealth did not establish or even at *689 tempt to establish any link between Henderson, the gun referred to, and the gunshots heard near the house.
In short, the record before this Court fails to demonstrate that “good cause” existed for excusing confrontation under the balancing test, because the Commonwealth has failed to satisfy its burden of establishing that a governmental interest was served by not producing the witnesses against Henderson that outweighed Henderson’s interest in confronting those witnesses. Therefore, the Commonwealth neither satisfied Henderson’s due process right to confront the adverse witnesses against him nor adequately justified its failure to do so. Consequently, the circuit court could not, and therefore did not, satisfy the requirements of Morrissey and balance Henderson’s interest in confronting the witnesses against him against any interest the Commonwealth may have had in denying Henderson that right.
B. Applying the Reliability Test
Although the United States Supreme Court has yet to consider the . due process implications of its post-Crawford jurisprudence, it seems clear to me that, where there is a liberty interest at stake, the subjective reliability of any testimonial hearsay no longer has a place in any analysis involving any form of the right to confront and cross-examine one’s accuser.
. However, even if I were to assume that the reliability test governs this case, the testimony still should not have been admitted. Contrary to the analysis of the majority, even preCrawford, the definition of evidence “reliable” enough to excuse confrontation was defined in Roberts and Lilly as evidence which satisfies a “firmly rooted” exception to the evidentiary rule barring hearsay testimony. The majority points to no “firmly rooted” hearsay exception that would apply to Ortiz’s testimony. In fact, none of them do. The majority simply finds her testimony subjectively reliable. However, the majority’s subjective assessment of the credibility of the hearsay related by Ortiz plays no role in any application of the reliability test. In this case, the hearsay statements that Ortiz *690 used to establish that Henderson violated the conditions of probation meet no firmly rooted exception to the hearsay rule that makes them inherently rehable. Rather, the evidence upon which the trial court revoked Henderson’s probation was unsworn statements by out-of-court witnesses whom Henderson had no ability to cross-examine. See Comito, 177 F.3d at 1171 (“[u]nsworn verbal allegations are, in general, the least reliable type of hearsay ...” (emphasis added)).
In the first incident, Ortiz spoke with both the victim and his daughter four days after the incident had occurred, and after both witnesses had spoken with Henderson in person regarding the phone calls. The majority contends that Henderson’s own statements corroborate the victim’s story. In response, I must first observe that corroboration is not an element of any hearsay exception, “firmly rooted” or otherwise. Even under the old and now rejected Roberts and Lilly standard for reliability, corroboration was not part of a confrontation analysis. Unless the hearsay evidence was in the form of a dying declaration, exited utterance or some other long standing exception to the rule barring hearsay, the evidence was constitutionally infirm even if corroborated. Moreover, Ortiz only testified that “[Henderson] tells me basically the same thing,” which, in context, would have been limited to the fact that he had told the victim and his daughter that “he lends his phone to a lot of people and he do[esn’t] remember who he loaned it to that day.” This is not corroborative of the attempted robbery. Instead, the fact that Henderson had loaned the phone to someone else and that he did not remember who it was does not corroborate any of the statements regarding Henderson’s involvement in the robbery.
In the second alleged crime, the victim related eyewitness information to Ortiz at the police station at some point after the incident occurred, but the record is not clear at what point the interview took place.[10] In addition, the information re *691 garding the alleged home invasion robbery was not detailed. Ortiz testified that the victim informed her that three subjects knocked on his front door, .entered the unlocked door, and stole some of his personal property. Ortiz stated that the victim told her subject number one had a gun and that subject number two was “Terrence” whom he had met a couple of weeks prior at the probation office. The victim then picked Henderson as one of the individuals out of a series of photos that Ortiz showed him. These statements are also unsworn statements by an out-of-court witness whom Henderson had no ability to cross-examine and, as such, are inherently unreliable. Id. The majority contends that these statements are reliable because they are also corroborated by Henderson’s own statements. Again, I note that inherent reliability based upon a firmly rooted hearsay exception is the test and any extrinsic corroboration is of no moment in a constitutional analysis and the record certainly does not suggest that the victim’s statements to Ortiz were exited utterances or subject to the res gestae or any other exception to the hearsay rule. In addition, Henderson’s statement to Ortiz only corroborated that he knew one of the co-defendants and that he had been in the vehicle that was involved in the investigation in which some of the stolen property was later discovered by the police. The statements did not corroborate any incriminating evidence against Henderson.
The majority cites to Crawford, 323 F.3d 123, in support of their argument. However, Crawford v. Jackson is a 2003 case which was decided prior to Crawford v. Washington. In fact, the same court addressed the issue of whether Crawford v. Jackson was still good law in light of the Supreme Court’s decision in Crawford v. Washington in Ash v. Reilly, 431 F.3d 826 (D.C.Cir.2005). Although the Ash court ultimately held that Crawford v. Washington did not overrule Crawford v. Jackson, the court remanded the case back to the trial court for a rehearing. Id. at 831. Interestingly, on rehearing, the *692 court ultimately employed a balancing test in which “whether the Commission impermissibly denied a parolee the right to confront adverse witnesses depends on the parolee’s need for confrontation as weighed against the Commission’s reasons for not producing adverse witnesses.” Ash v. Reilly, 433 F.Supp.2d 37, 43 (D.D.C.2006).
Because neither of the out-of-court statements made to Ortiz were inherently reliable by satisfying a firmly rooted exception to the hearsay rule, I believe that the majority errs in holding that the hearsay evidence offered by Ortiz is so demonstrably and inherently reliable that Henderson’s limited right to confrontation in a probation revocation hearing should have been denied.
III. Conclusion
Because the Supreme Court has overturned Roberts and Lilly and altered the Sixth Amendment Confrontation Clause landscape with Crawford, v. Washington and subsequent cases, I do not believe that reliability is any longer the lynchpin of a confrontation analysis, under either the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment. Although the Sixth Amendment right is not directly implicated in probation hearings, it does directly correlate to the right to confrontation afforded in such proceedings under the Due Process Clause of the Fourteenth Amendment. I believe that it makes no sense to maintain a separate analytical formula utilizing otherwise expressly rejected criteria for a due process confrontation analysis as distinguished from a similar, though more rigorous, analysis to the more comprehensive right of confrontation that attaches at trial.
For these reasons, I believe that the courts of the Commonwealth should adopt the balancing test because it eschews the superseded reliability analysis that is no longer constitutionally favored and instead, places the burden on the Commonwealth to either produce the witnesses for cross-examination or require it to establish good cause for not doing so. Put differently, in non-trial proceedings involving an accused’s liberty interest, I believe that we should adopt an approach *693 that requires the Commonwealth to explain and justify its failure to provide confrontation before considering the evidentiary admissibility of any testimonial hearsay. To do so would be more consistent with the overall purpose of both Morrissey, which requires an opportunity to confront testimonial hearsay as the default position for any due process analysis, and the analytical framework found in the post-Roberts cases of Crawford, Davis, Melendez-Diaz, Bryant, and Bullcoming. As discussed above, what all of these cases have in common is that they require more than mere considerations of reliability in permitting the use of testimonial hearsay in a trial setting, and thus I believe that, where a liberty interest is at stake, the balancing test is more faithful to current confrontation jurisprudence in the context of providing due process.
In summary, I would hold that the circuit court erred in failing to either require the Commonwealth to honor Henderson’s due process right to confront his accusers or in its failure to require an explanation from the Commonwealth and to make specific findings that good cause existed for not doing so. I would therefore remand this case to the circuit court for a new hearing on the issue of whether Henderson’s probation should be revoked, if the Commonwealth is so advised. I would further hold that if, on remand, it is necessary for the circuit court to determine if “good cause” exists for not permitting Henderson to confront the witnesses against him, the circuit court should employ a balancing test as outlined above for making that determination.

. Virginia cases that cite to Morrissey inexplicably omit the parenthetical language "(unless the hearing officer specifically finds good cause for not allowing confrontation).” 408 U.S. at 489, 92 S.Ct. at 2604; see Dickens, 52 Va.App. at 417, 663 S.E.2d at 550; Copeland v. Commonwealth, 14 Va.App. 754, 756, 419 S.E.2d 294, 295 (1992).

. Because of the majority’s insistence on characterizing this issue as one of "Hearsay Admissibility” (see generally section IV of the majority opinion), rather than the due process issue that it is, we have invited confusion of the part of the attorneys and trial judges who expect guidance from this Court. To at least make my position clear, I acknowledge and agree that hearsay is generally admissible in probation revocation hearings, subject only to the constraints of due process and any statutory requirements. Thus, non-testimonial hearsay is admissible because it does not implicate any due process confrontation issue while testimonial hearsay is not admissible as it is violative of the Due Process Clause of the Fourteenth Amendment if the record does not reflect "good cause” for the Commonwealth’s failure to produce the accuser for cross-examination.

. Despite addressing the merits of this issue, the majority nonetheless asserts that Henderson has waived this issue by his failure to object with sufficient specificity. The basic premise behind the contemporaneous objection requirement of Rule 5A:18 that an objection be made "with reasonable certainty” is to place the court or hearing officer on notice that an error of law will occur or has occurred, in sufficient time to permit corrective action. See Joyner v. Commonwealth, 10 Va.App. 290, 392 S.E.2d 822 (1990). While judges may reasonably differ about the degree to which a record reflects that an objection has been made with "reasonable certainty," I do not read either the rule or our jurisprudence interpreting it as requiring more than that a party point to a question, an answer, an exhibit, or as in this case, a witness and advise the court of the basic nature of the asserted error. See e.g. Hicks v. Commonwealth, 17 Va.App. 535, 538, 439 S.E.2d 414, 416 (1994) ("An objection is sufficient if at the time the ruling or order of the court is made or sought, a party makes known to the court the action which he desires the court to take and his grounds therefor.").
In this case, that was certainly done. At the revocation hearing, Henderson objected to Detective Ortiz's testimony regarding what third parties told her because "if that hearsay is admitted, that violates his right to confrontation, which he is guaranteed in probation violation proceedings.” I believe that this objection was sufficient to make the circuit court aware of the action Henderson desired the court to take and the grounds therefor. Moreover, I do not agree with the majority that Henderson was required to specifically assert the failure of the Commonwealth to establish "good cause.” Morrissey makes it clear that it was the Commonwealth’s burden to establish "good cause” if it was not willing to produce Henderson’s accusers, not Henderson’s burden to establish the lack of it. Not only did the Commonwealth fail to assert any reason at all for its failure to produce the witnesses, the prosecutor incorrectly contended that the right of confrontation simply did not apply at all to a revocation hearing and the circuit court then promptly overruled Henderson’s objection without comment and certainly without making any specific finding of "good cause” for denying confrontation as required by Morrissey.
In addition, to the extent that the majority excuses the circuit court’s failure to make a specific finding of "good cause” as required by Morrissey by resting upon the presumption that the circuit court is presumed to know and apply the law correctly, I respectfully suggest that any fair reading of the dialogue between the circuit court, the prosecutor, and Henderson’s counsel would lead to the clear conclusion that any such presumption is rebutted by the record and that however inartful the objection by Henderson’s counsel might have been, neither the prosecutor nor the circuit court were aware of either the existence or the parameters of the due process right of confrontation or that *672 Morrissey expressly requires that confrontation, be provided unless a court specifically finds good cause for not doing so.
Finally, as part of its "kitchen sink” approach to its analysis affirming the judgment in this case, the majority also asserts that in this dissent I have recast the assignment of error in this case. I respectfully disagree and note that the assignment of error granted by the September 15, 2010 order of this Court in its entirety is as follows: "Appellant contends the trial court violated his right of confrontation by admitting Ortiz's hearsay testimony.” It is that assignment of error that I believe was preserved below and which I have tried, however unpersuasively to the majority, to address here.

. It should also be noted that the Bell court improperly interpreted Morrissey as being based on the Sixth Amendment. Bell, 785 F.2d at 642 (“In Morrissey, the Supreme Court held that the Sixth Amendment confrontation clause affords parolees in parole-revocation proceedings the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).”).

. Ortiz testified that she "received a phone call at night at my house to come in to investigate a home invasion robbery" and that she "came to the station, that was October 8th, met with the victim.” She later *691 testified that the home invasion robbery took place "around 11:00 at night.”